[No. H034892. Sixth Dist. Feb. 24, 2011.]

ARNULFO MAGALLAN, Petitioner, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1448

COUNSEL

James S. Egar, Public Defender, and Donald Earl Landis, Assistant Public Defender, for Petitioner.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Seth K. Schalit, Deputy Attorneys General, for Real Party in Interest.

Mary Greenwood, Public Defender, and Michael Ogul, Deputy Public Defender, for Santa Clara County Public Defender as Amicus Curiae.

Jeff Adachi, Public Defender, Teresa Caffese, Chief Attorney, and Dorothy Bischoff, Deputy Public Defender, for Public Defender of the City and County of San Francisco as Amicus Curiae.

Sanger & Swysen, Stephen K. Dunkle and John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae.

W. Scott Thorpe; and Doug MacMaster, Deputy District Attorney, for California District Attorneys Association as Amicus Curiae.

OPINION

**MIHARA, J.**—Petitioner Arnulfo Magallan was charged by complaint with a felony. He filed a suppression motion in advance of the preliminary examination. Magallan then filed a discovery motion seeking material related to his suppression motion, which the prosecutor had refused to provide. The magistrate granted his discovery motion. The prosecution filed a writ petition in the superior court challenging the magistrate's order on the ground that the magistrate was precluded by statute from ordering this discovery. A panel of three superior court judges, who were the same three judges who formed the superior court's appellate division, heard the petition and issued a writ. The superior court ordered the magistrate to deny the discovery motion.

Magallan challenges by this writ petition both the jurisdiction of that panel to hear the writ petition and the merits of its decision. We hold that the superior court panel did not lack subject matter jurisdiction simply because the same three judges also formed the superior court's appellate division, as the record does not establish that they were sitting as the appellate division when they held a hearing on the writ petition. On the merits, however, we conclude that the superior court erred. Under this court's decision in *People v.*

*Superior Court (Mouchaourab)* (2000) 78 Cal.App.4th 403 [92 Cal.Rptr.2d 829] *(Mouchaourab)*, the magistrate was empowered to grant Magallan's motion for discovery in support of his suppression motion.

## I. Background

Magallan was arrested on May 5, 2008. He was charged by complaint with a single count of felony possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). Magallan was arraigned on May 7, 2008, and he entered a plea of not guilty. The preliminary examination was scheduled for May 21. On May 19, the court granted Magallan's request for a continuance, and the preliminary examination was rescheduled for June 18, 2008. On June 16, the court again granted a defense request for a continuance and scheduled for June 30 a hearing to schedule the preliminary examination. On June 30, the court set for July 30 both the preliminary examination and "PC 1538.5 Motion concurrent."

On July 24, 2008, Magallan's trial counsel filed a suppression motion asserting that the evidence obtained from a search of Magallan's person and home should be suppressed because the police had lacked a warrant. On July 28, the scheduled hearing was rescheduled to August 6. On August 4, Magallan's trial counsel asked the prosecutor to provide "911 records for PC 1538.5 Motion," and, at her request, the preliminary examination date was vacated, and a hearing to reschedule the preliminary examination was set for August 18. On August 18, the preliminary examination was rescheduled to September 10. On September 8, it was rescheduled to September 24.

On September 29, 2008, Magallan's trial counsel filed a "FORMAL MOTION FOR DISCOVERY." In the motion, she explained that, on June 30, 2008, she had asked the prosecutor for "a copy of the audio recordings of the 911 telephone call, dispatch communications to resolve the call, and computer logs generated as a result of the dispatch communications." This evidence was intended to "be used at the upcoming suppression motion [hearing] to confront and cross examine the arresting officers' testimony concerning those timing sequences as it relates to the prosecution's proffered explanations for effectuating a warrantless arrest." Magallan's trial counsel argued that the discovery statutes required disclosure, and, in any event, Magallan's rights to due process and to the effective assistance of counsel required disclosure.

The prosecution opposed the discovery motion on the ground that it had no statutory or constitutional obligation to provide the requested items. It argued that the requested items were not statutorily discoverable because (1) "it is not within 30 days of trial," and (2) "the People do not envision using the

[911] call to law enforcement as evidence at trial." The prosecution asserted that there was no statutory authority for discovery when charges were pending before a magistrate. "[D]iscovery is mandated only at the trial court level of the criminal proceedings, not at the magistrate court, preliminary examination level of felony criminal proceedings such as the case herein." Thus, in the prosecution's view, no criminal defendant was statutorily entitled to any discovery whatsoever prior to the preliminary examination. With respect to federal constitutional obligations, the prosecution asserted that its only obligation was to provide exculpatory evidence to the defense prior to the preliminary examination.

On October 14, 2008, the magistrate ordered the prosecutor to turn over the requested items to the defense. The prosecution filed a motion for reconsideration. In this motion, the prosecutor argued that magistrates lack any power to order discovery. Magallan filed opposition to the motion. In the prosecutor's reply to the opposition, he asserted that the items sought by the discovery motion "are irrelevant for purposes of determining the validity of the search." On November 19, 2008, the magistrate reaffirmed her earlier ruling and ordered the prosecution to provide the requested discovery by December 1.

On December 1, 2008, the prosecution filed a writ petition challenging the magistrate's discovery order. On June 29, 2009, a panel of three superior court judges granted the prosecution's petition. On August 27, 2009, the magistrate set aside her order granting the discovery motion. On October 28, 2009, Magallan filed a writ petition in this court. In January 2010, this court issued a stay of the trial court proceedings. In May 2010, this court issued an order to show cause.

## II. Discussion

### A. Subject Matter Jurisdiction

Magallan claims that the judges who heard the prosecution's writ petition lacked subject matter jurisdiction because these three judges had not been assigned to any "writ department" of the superior court but were instead serving as the "appellate division" of the superior court in acting on the petition.

#### 1. Background

The prosecution's December 1, 2008 writ petition in the superior court was captioned "IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA [¶] COUNTY OF MONTEREY—CRIMINAL WRIT DEPARTMENT." On

December 2, 2008, a writ issued staying the discovery order and commanding the magistrate either to reverse her order or to show cause why she should not be ordered to do so. The alternative writ was captioned "SUPERIOR COURT OF CALIFORNIA [¶] COUNTY OF MONTEREY" and was signed by Judge Russell D. Scott, who was identified in the order as "Judge of the Superior Court." It is undisputed that Judge Scott was the presiding judge of the Monterey County Superior Court at the time of that order.

On January 12, 2009, Magallan filed his return. The return was captioned "IN THE SUPERIOR COURT OF CALIFORNIA [¶] MONTEREY COUNTY, APPELLATE DEPARTMENT." On January 21, the superior court clerk noted that the writ proceeding had been assigned a civil case number and was set "in Department 9 for Setting of Hearing on the Writ." On January 27, the prosecutor filed his reply, which, like Magallan's return, included in its caption "APPELLATE DEPARTMENT."

On January 29, 2009, the parties appeared in Department 9, which was not Judge Scott's department, and the case was continued "for hearing on the writ" in "Salinas courtroom 2" on February 18. The hearing on the writ petition actually took place on April 1. On April 13, the prosecution filed a pleading captioned "CRIMINAL WRIT DEPARTMENT" in which it noted that the "Appellate Division" lacked subject matter jurisdiction over the writ and asked that the writ petition be heard by the "criminal writ division of the superior court."

The June 29, 2009 order granting the writ petition was captioned "SUPE-RIOR COURT OF CALIFORNIA [¶] COUNTY OF MONTEREY" and stated that the matter had been heard "in Department 4 of this Court, before Superior Court Judges Russell D. Scott, Albert H. Maldonado and Timothy P. Roberts." Judge Maldonado dissented from the order. Just over a week later, the three judges who had issued the decision in the writ matter issued an order stating that the writ petition had been heard by them "sitting as a Superior Court panel pursuant to *People v. Superior Court (Jimenez)* (2002) 28 Cal.4th 798 [123 Cal.Rptr.2d 31, 50 P.3d 743]."

Magallan thereafter filed in the "Appellate Department" a petition for rehearing or certification in which he asserted that the judges who heard the writ petition lacked jurisdiction because they had heard the petition as the "Appellate Division," which lacked jurisdiction. Judge Scott then filed an order "[a]s presiding judge of the appellate division" which "transferred" the rehearing petition "to the writ panel of the Superior Court that decided this matter." The record before us contains no ruling on the rehearing petition.

## 2. Analysis

Magallan claims that the panel of three superior court judges who heard the prosecution's writ petition lacked subject matter jurisdiction.

The superior court is the court with jurisdiction to review the actions of a magistrate and issue a writ of mandate to a magistrate. (*People v. Superior Court (Jimenez)* (2002) 28 Cal.4th 798, 803–804 [123 Cal.Rptr.2d 31, 50 P.3d 743].) "The Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings. Those courts also have original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition. The appellate division of the superior court has original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition directed to the superior court *in causes subject to its appellate jurisdiction.* [¶] Superior courts have original jurisdiction in all other causes." (Cal. Const., art. VI, § 10, italics added.) The superior court's "appellate jurisdiction" in criminal cases is limited to misdemeanor cases and does not extend to felony cases. (Cal. Const., art. VI, § 11, subd. (b); Pen. Code, § 1235, subd. (b).)

Each superior court has an "appellate division" consisting of three or four judges. (Code Civ. Proc., § 77, subd. (a).) The Chief Justice assigns judges to serve as members of a superior court's appellate division for specified terms and designates a presiding judge of the appellate division. (*Ibid.*) "*In addition to their other duties*, the judges designated as members of the appellate division of the superior court shall serve for the period specified in the order of designation." (Code Civ. Proc., § 77, subd. (c), italics added.) "The presiding judge [of the appellate division] shall convene the appellate division *when necessary.*" (Code Civ. Proc., § 77, subd. (d), italics added.) The judges assigned to the appellate division obviously do not serve solely as members of the appellate division, as they have "other duties," the regular duties of a superior court judge, which consume their time when it is not "necessary" to "convene" the appellate division.

"The jurisdiction of causes is vested by the constitution in the [superior] *court*, not in any particular judge or department thereof. The constitution, in fact, says nothing about departments. It provides that there may be as many sessions of the court at the same time as there are judges (Const., art. VI, sec. 6); but, whether sitting separately or together, the judges hold but one and the same court, and the jurisdiction they exercise in any cause is that of the court, and not the individual. The division into departments is purely imaginary, and for the conveniences of business and of designation. Transferring a cause for trial or disposition from one of those departments to another does not effect a change or transfer of the jurisdiction

of that cause; that remains at all times in the court as a single entity." (*White v. Superior Court* (1895) 110 Cal. 60, 67 [42 P. 480] (*White*).) "[I]t is well settled that if one department of a court exercises authority in a matter which might properly be heard in another, the action constitutes at most an irregularity and does not affect the jurisdiction." (*Williams v. Superior Court* (1939) 14 Cal.2d 656, 663 [96 P.2d 334] (*Williams*).)

"[I]t is apparent not only that there may be as many sessions of the court as there are superior court judges in the county, . . . but also that all of these judges can sit together at one time for the trial of the case, hence, the provision that the decision of one judge sitting at a separate session of the superior court is equally effective as though all the judges of the superior court were sitting and rendering judgment. The constitution also contemplates a session held by 'one or more judges' as well as by one, and by all." (*Athearn v. Nicol* (1921) 187 Cal. 86, 91–92 [200 P. 942] (*Athearn*).) *Athearn* held that three superior court judges did not lack jurisdiction to "sit together" and jointly hear a cause before the superior court. (*Athearn*, at p. 92.) "To this question the constitution makes a plain answer, that three judges of the superior court may, if they choose, sit together for the purpose of hearing any proceeding over which the court itself has jurisdiction." (*Athearn*, at p. 93.)

Magallan acknowledges *Athearn*, but he claims that the three superior court judges who heard the prosecution's writ petition could not properly hear the writ petition because the Monterey County Superior Court had no " 'writ' department" and these three judges were "actually assigned to different departments."

■ In 2008, when the petition was filed, the Monterey County Superior Court's local rules required that a petition for a writ of mandate "from the Court must be addressed to the Presiding Judge of the Appellate Department" and served on "the Presiding Judge of the Court."[1] (2008 Local Rules, former rules 9.19, 15.03.) The 2008 Local Rules also provided that the "writ judge shall be designated by the Presiding Judge." (2008 Local Rules, former rule 15.01.) In January 2009, the Local Rules changed.[2] Under the 2009 Local Rules, a petition for a writ of mandate "FROM THE COURT" *in a felony case* was required to "be presented to the Presiding Judge," not the Presiding Judge of the Appellate Department. (2008 Local Rules, rule 15.02; cf. 2009

---

[1] The 2008 Superior Court of Monterey County, Local Rules (2008 Local Rules) can be found at: <http://www.monterey.courts.ca.gov/Documents/RulesOfCourt/Monterey%20Local%20Rules%20of%20Court.pdf> (as of Feb. 24, 2011).

[2] The 2009 Superior Court of Monterey County, Local Rules (2009 Local Rules) can be found at: <http://www.monterey.courts.ca.gov/Documents/RulesOfCourt/Monterey%20Local%20Rules%20of%20Court%20effective%20July%201%202009.pdf> (as of Feb. 24, 2011).

Local Rules, rule 9.19 [petitions in *misdemeanor* cases must be presented to presiding judge of appellate division.].) The 2009 Local Rules no longer contained any provisions regarding the assignment of a "writ judge."

Under the 2008 Local Rules, the writ petition, which was filed in 2008, was properly "addressed to" and served on Judge Scott, who, in 2008, was both the presiding judge of the appellate department and the presiding judge of the superior court. When the petition was assigned to a three-judge panel for hearing in 2009, the 2009 Local Rules contained no provisions regarding the designation of the judge or judges who would hear a writ petition. Since the 2009 Local Rules did not specify which department or which judge or judges should be assigned to hear such a writ petition, the 2009 Local Rules did not preclude the assignment of a criminal writ petition in a felony case to a panel of three superior court judges.

We can see no jurisdictional significance in the fact that the Monterey County Superior Court had no "CRIMINAL WRIT DEPARTMENT" when the petition was filed or heard. Superior court "departments" are "purely imaginary" and have no impact on the court's jurisdiction. (*White, supra,* 110 Cal. at p. 67; *Williams, supra,* 14 Cal.2d at p. 663.) Superior court judges need not be assigned to any particular department to acquire jurisdiction to hear a case over which the superior court has jurisdiction, and the mere fact that another judge in another department should have heard the case does not mean that the judge or judges who actually heard the case lacked jurisdiction.

■ Magallan argues that the three judges who heard the writ petition lacked jurisdiction because they in fact heard the petition in their specially designated capacity as the superior court's "appellate division," which indisputably lacked jurisdiction over the writ petition, rather than in their general capacity as superior court judges.[3] This argument is based on two circumstances: (1) the presence of inaccurate captions on Magallan's opposition to the prosecution's petition and on the prosecutor's reply, and (2) the fact that the three judges who heard the writ petition were the same three judges who served on the court's "appellate division." The fact that some of the pleadings contained inaccurate captions does not affect the superior court's jurisdiction over the petition, especially where the petition itself was properly addressed to and served on Judge Scott, in accordance with the 2008 Local Rules. The three judges who heard the petition explicitly stated that they were *not* acting as the appellate division in hearing the writ petition, and the fact that they also served on the appellate division did not prevent them from properly serving in their ordinary capacity as superior court judges in hearing the writ petition.

---

[3] The Attorney General concedes that the "appellate division" lacked subject matter jurisdiction over the writ petition.

We reject Magallan's claim that the three judges who heard the prosecution's writ petition lacked subject matter jurisdiction over this matter.

## B. Magistrate's Power to Order Discovery

The superior court's writ of mandate to the magistrate was based solely on the court's determination that the magistrate lacked the power to order the prosecution to provide Magallan with *any* discovery in advance of the preliminary examination. Magallan contends that the magistrate did not lack the power to order the prosecution to provide him with the discovery he needed to pursue his suppression motion in conjunction with the preliminary examination.

A criminal defendant is statutorily authorized to bring a suppression motion at the preliminary examination if the prosecution seeks to introduce at the preliminary examination evidence that the defense seeks to suppress. (Pen. Code, § 1538.5, subd. (f)(1).) In this case, it is obvious that the prosecution would have to introduce at the preliminary examination evidence that methamphetamine was found in Magallan's possession in order to support a probable cause finding. Magallan's motion properly sought to suppress such evidence at the preliminary examination.

A criminal defendant ordinarily must serve such a suppression motion at least five days in advance of the date set for the preliminary examination, but the defense may obtain a continuance if the defendant or his attorney "was not aware of the evidence or was not aware of the grounds for suppression before the preliminary examination." (Pen. Code, § 1538.5, subd. (f)(2).) Here, it was undisputed that Magallan timely served his suppression motion.

The sole question before us is whether the magistrate had the power to grant Magallan the discovery that he sought in support of his properly filed, statutorily authorized, suppression motion.

Until 1990, California had no statutory provisions regarding criminal discovery, and it was well recognized that magistrates had the power to order discovery. In *Holman v. Superior Court* (1981) 29 Cal.3d 480 [174 Cal.Rptr. 506, 629 P.2d 14] (*Holman*), the California Supreme Court began with "the general rule that in the absence of contrary legislation courts have the inherent power to order appropriate pretrial discovery" and concluded that a magistrate had the "inherent power" to order prepreliminary examination discovery because the Legislature had not expressed the "intent to limit the availability of discovery prior to the preliminary hearing." (*Holman*, at pp. 485, 483.) However, the California Supreme Court has also noted that "[t]he exercise of a judicial power over criminal discovery which inheres in courts when the Legislature is silent must be tempered and restrained when the Legislature has spoken." (*People v. Municipal Court (Runyan)* (1978) 20 Cal.3d 523, 528 [143 Cal.Rptr. 609, 574 P.2d 425].)

In 1990, Proposition 115 enacted chapter 10 of part 2 of title 6 of the Penal Code (Chapter 10). Chapter 10 begins with Penal Code section 1054 and concludes with Penal Code section 1054.10.

Penal Code section 1054 describes the purposes of Chapter 10: "This chapter shall be interpreted to give effect to all of the following purposes: [¶] (a) To promote the ascertainment of truth in trials by requiring timely pretrial discovery. [¶] (b) To save court time by requiring that discovery be conducted informally between and among the parties before judicial enforcement is requested. [¶] (c) To save court time in trial and avoid the necessity for frequent interruptions and postponements. [¶] (d) To protect victims and witnesses from danger, harassment, and undue delay of the proceedings. [¶] (e) To provide that *no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States.*" (Pen. Code, § 1054, italics added.)

Penal Code section 1054.1 lists the information that the prosecutor must disclose to the defense.[4] Penal Code section 1054.3 lists the information that the defense must provide to the prosecution.[5] Penal Code section 1054.5 delineates the procedures mandated by Chapter 10: "(a) *No order requiring discovery shall be made in criminal cases except as provided in this chapter. This chapter shall be the only means by which the defendant may compel the disclosure or production of information* from prosecuting attorneys, law enforcement agencies which investigated or prepared the case against the defendant, or any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties. [¶] (b) Before a party may seek court enforcement of any of the

---

[4] "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] (a) The names and addresses of persons the prosecutor intends to call as witnesses at trial. [¶] (b) Statements of all defendants. [¶] (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged. [¶] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial. [¶] (e) Any exculpatory evidence. [¶] (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial." (Pen. Code, § 1054.1.)

[5] "(a) The defendant and his or her attorney shall disclose to the prosecuting attorney: [¶] (1) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial. [¶] (2) Any real evidence which the defendant intends to offer in evidence at the trial." (Pen. Code, § 1054.3, subd. (a).)

disclosures required by this chapter, the party shall make an informal request of opposing counsel for the desired materials and information. If within 15 days the opposing counsel fails to provide the materials and information requested, the party may seek a court order. *Upon a showing that a party has not complied with Section 1054.1 or 1054.3* and upon a showing that the moving party complied with the informal discovery procedure provided in this subdivision, a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (Pen. Code, § 1054.5, subds. (a) & (b), italics added.)

Penal Code section 1054.7 identifies the time limits for the disclosures required by Chapter 10: "The disclosures required under this chapter shall be made *at least 30 days prior to the trial,* unless good cause is shown why a disclosure should be denied, restricted, or deferred. If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately, unless good cause is shown why a disclosure should be denied, restricted, or deferred. 'Good cause' is limited to threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement. [¶] Upon the request of any party, the court may permit a showing of good cause for the denial or regulation of disclosures, or any portion of that showing, to be made in camera. A verbatim record shall be made of any such proceeding. If the court enters an order granting relief following a showing in camera, the entire record of the showing shall be sealed and preserved in the records of the court, and shall be made available to an appellate court in the event of an appeal or writ. In its discretion, the trial court may after trial and conviction, unseal any previously sealed matter." (Pen. Code, § 1054.7, italics added.)

The Attorney General asserts that Chapter 10 is "limited to trial discovery" and therefore does not permit any prepreliminary hearing discovery. He relies heavily on *Jones v. Superior Court* (2004) 115 Cal.App.4th 48 [8 Cal.Rptr.3d 687] (*Jones*). The issue in *Jones* was whether Penal Code section 1054.3's reciprocal discovery provisions required a defendant to provide discovery to the prosecution during *post*conviction proceedings to revoke the defendant's probation. (*Jones,* at p. 50.) The court held that Chapter 10's reciprocal discovery provisions are not applicable in that postconviction setting because Chapter 10 applies only to "trial-related information" in "a trial setting" and explicitly requires disclosures of such information to be made " '*prior to the trial.*' " (*Jones,* at pp. 58–59.)

*Jones* provides no support for the Attorney General's argument here. Magallan seeks discovery "prior to the trial" of information material to his defense against the criminal charge. The Attorney General does not contend that Magallan was not entitled to discovery of the information he seeks *prior to trial*, but only that he was not entitled to obtain it *prior to the preliminary examination. Jones's* reference to "a trial setting," which is not reflected anywhere in Chapter 10's statutory language, was not intended to distinguish between the different preconviction phases of a criminal proceeding but only between preconviction and postconviction proceedings.

■ The Attorney General also relies on language from *Holman*. In *Holman*, the California Supreme Court agreed with the proposition that "the preliminary examination is not a trial, and those discovery procedures which are available to prepare for trial *may be* neither applicable nor appropriate in the present context." (*Holman, supra*, 29 Cal.3d at p. 485, italics added.) Nevertheless, the court did not hold that such discovery procedures were unavailable or inappropriate in advance of the preliminary examination. Instead, the court simply cautioned magistrates not to grant discovery motions "in the absence of a showing that such discovery is reasonably necessary to prepare for the preliminary examination" and observed that "[p]retrial discovery is aimed at facilitating the swift administration of justice, not thwarting it." (*Holman*, at p. 485.)

The superior court's order below was not based on a finding that the magistrate's discovery order was an abuse of her discretion, and the Attorney General makes no such argument on appeal. Since the discovery sought by Magallan was narrowly focused on his suppression motion, the requisite showing of reasonable necessity was made (*Holman, supra*, 29 Cal.3d at p. 485 [magistrate may order "reasonably necessary" discovery]), and the prosecution's attempt to delay discovery of this information could only thwart justice rather than facilitate its swift administration.[6]

---

[6] The parties cited *Galindo v. Superior Court* (2010) 50 Cal.4th 1 [112 Cal.Rptr.3d 673, 235 P.3d 1] (*Galindo*) at oral argument. In *Galindo*, the defendant sought *Pitchess* (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]) discovery in advance of the preliminary examination. (*Galindo*, at p. 7.) Because *Pitchess* discovery is authorized by an express statutory provision, Chapter 10 did not preclude the defendant from obtaining such discovery. (*Galindo*, at p. 11.) Nevertheless, the California Supreme Court held that a magistrate was not *required* to grant a *Pitchess* motion if it would delay the preliminary examination. (*Galindo*, at pp. 11–12.) As *Pitchess* discovery is time consuming to obtain, and is of limited relevance at a preliminary examination, the California Supreme Court held that a magistrate has discretion to deny a *Pitchess* motion without prejudice to the renewal of the motion after the defendant is held to answer. (*Galindo*, at pp. 12–14.)

We do not confront in this case the issues that were before the California Supreme Court in *Galindo*. Here, the issue is not whether the magistrate had the *discretion* to deny defendant's motion but whether Chapter 10 deprived the magistrate of the *power* to grant it. *Galindo* did not confront such an issue because *Pitchess* discovery is authorized by an express statutory provision and therefore is not precluded by Chapter 10.

██ The Attorney General claims that Chapter 10 cannot be applicable before the preliminary examination since this is "before the parties know whether there will even be a trial," which would, in his view, make Penal Code section 1054.7's timing requirements ineffectual. Penal Code section 1054.7 requires the prosecution to provide the required information to the defense "*at least* 30 days before trial." (Italics added.) It does not preclude a defendant from making an earlier discovery motion under Penal Code section 1054.5, nor does it preclude such a motion from being granted more than 30 days in advance of trial. If the Attorney General's interpretation were correct, the prosecutor's discovery obligations would suddenly take effect 30 days before trial, and the defense would be deprived of the opportunity to prepare for trial before that time. Such an interpretation would be completely at odds with the express statutory purposes of Chapter 10, which are to promote "timely pretrial discovery," avoid the necessity for postponements, and avoid "undue delay of the proceedings." Precluding the granting of discovery motions until 30 days before trial would work against the goal of "timely pretrial discovery" and would inevitably result in postponements and delays in the proceedings. In this case, delaying the discovery of this information material to a suppression motion until just 30 days before trial would result in the delay of the suppression hearing, which would hamper the goals that Chapter 10 was intended to serve.

The Attorney General seems to suggest that the changes Proposition 115 made to the nature of preliminary examinations resulted in magistrates lacking the power to order discovery. Proposition 115 did not eliminate a criminal defendant's right to bring a suppression motion at the preliminary examination. Hence, the need for discovery in support of such a motion was left unchanged by Proposition 115's other changes to the nature of preliminary examinations. The issue before us in this case is not the broad issue of whether magistrates have an expansive power to order discovery of any kind in advance of the preliminary examination, but only the narrow issue of whether a magistrate has the power to order discovery in support of a suppression motion to be heard in conjunction with the preliminary examination. We decline to decide the broader issue, as it is not before us in this case.[7]

██ The Attorney General argues that the magistrate lacked the power to order the discovery sought by Magallan because Chapter 10 does not require a prosecutor to provide such discovery, and Chapter 10 is the exclusive source of the prosecution's discovery obligations. Chapter 10 provides both that "no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States" (Pen. Code, § 1054, subd. (e)) and that "[n]o order requiring

---

[7] The amicus curiae briefs are centered on that broader issue. Resolution of that issue must await a case in which it is presented.

discovery shall be made in criminal cases except as provided in this chapter" (Pen. Code, § 1054.5, subd. (a)). The specific items that the prosecutor is obligated to disclose to the defense do not include all materials that may be relevant to a suppression motion. (Pen. Code, § 1054.1.)

Because the items sought by Magallan do not necessarily fall within the prosecutor's Penal Code section 1054.1 obligations, the Attorney General asserts that the magistrate lacked any power to order discovery of those items. In the Attorney General's view, the prosecution's only discovery obligation outside of Chapter 10 is its federal constitutional obligation to disclose exculpatory evidence to the defense. He attempts to distinguish this court's decision to the contrary in *Mouchaourab*, but *Mouchaourab* is actually closely on point.

The issue in *Mouchaourab* was whether a criminal defendant was entitled to discovery of a transcript of nontestimonial portions of a grand jury proceeding to assist in pursuit of a Penal Code section 995 motion to dismiss the indictment. The California Supreme Court had previously held that a Penal Code section 995 motion could be pursued based on nontestimonial events, such as the prosecutor misinstructing or misadvising the grand jury or failing to provide exculpatory evidence to the grand jury. (*Mouchaourab, supra,* 78 Cal.App.4th at pp. 420–425.) Although Penal Code sections 938 and 938.1 required the preparation of transcripts of the testimonial portions of grand jury proceedings and required that those transcripts be turned over to the defense if an indictment was returned, "no express statute" required or authorized discovery of a transcript of *nontestimonial* portions of grand jury proceedings. (*Mouchaourab,* at pp. 421, 427–428.) The prosecution took the position that, due to the absence of any statute authorizing the requested discovery, Chapter 10 precluded the court from ordering discovery of the requested transcript. (*Mouchaourab,* at p. 425.) The defense claimed that the right to due process trumped Chapter 10. (*Mouchaourab,* at p. 425.)

The majority opinion in *Mouchaourab* rejected a "strict interpretation" of Penal Code sections 938 and 938.1. It concluded that those statutes had to be interpreted to permit a court to order discovery of nontestimonial portions of grand jury proceedings because otherwise a defendant would be unable to pursue a Penal Code section 995 motion based on nontestimonial events. "It defies common sense to think that the Legislature intended to provide rights under these statutes but at the same time denied the indicted defendant any means to enforce those rights." (*Mouchaourab, supra,* 78 Cal.App.4th at p. 428.) "A defendant's ability to raise such claims and establish the requisite showing would be unduly restricted without access to the relevant nontestimonial portions of the record of the grand jury proceedings. In sum, we believe that sections 995, 939.71 and to a certain extent section 939.6 provide

the requisite 'express statutory provisions,' within the meaning of section 1054, subdivision (e), authorizing discovery of nontestimonial grand jury proceedings." (*Mouchaourab*, at p. 429.)

The separate concurring opinion in *Mouchaourab* reached the same result but did not base its conclusion on the majority's reasoning that Penal Code section 995 or any other statute was an "express" statutory provision requiring the discovery in question. Instead, the concurring opinion reasoned that the defendant's right to due process under the California Constitution entitled him to the requested discovery. (*Mouchaourab, supra,* 78 Cal.App.4th at p. 441 (conc. opn. of Mihara, J.).) "[D]efendants have a California constitutional due process right to challenge indictments on the ground that the grand jury was exposed to prejudicial or erroneous statements by the court or the prosecutor. As this California constitutional right cannot be vindicated without permitting defendants to obtain transcripts of the nontestimonial portions of the grand jury proceedings, the California Constitution entitles defendants to discovery of such transcripts. Although Penal Code section 1054, subdivision (e) precludes discovery except where expressly required by statute or mandated by the *United States* Constitution, Penal Code section 1054, subdivision (e), as a mere statute, has no power to preclude discovery where it is required to vindicate rights guaranteed by the California Constitution." (*Mouchaourab*, at pp. 443–444 (conc. opn. of Mihara, J.).)

Whether we follow the reasoning of the majority opinion in *Mouchaourab* or that of the concurring opinion in *Mouchaourab*, we are led to the same conclusion. Under the majority's reasoning, Penal Code section 1538.5, subdivision (f) is an "express" statutory provision, which entitles a defendant to the discovery necessary to support the suppression motion that it authorizes to be brought in conjunction with the preliminary examination. Under the concurring opinion's reasoning, a defendant's right to due process under the California Constitution takes precedence over Chapter 10 and entitles the defense to the discovery necessary to support a Penal Code section 1538.5, subdivision (f) motion.[8]

The Attorney General claims that the *Mouchaourab* majority's analysis does not apply here for two reasons. First, a defendant bringing a

---

[8] The California Supreme Court has long recognized that a criminal defendant has a right to due process under the California Constitution at a suppression hearing. " '[T]he spirit and the purpose' of the right to due process under the California Constitution is 'to assure to everyone a full and ample opportunity to be heard before he can be deprived of his liberty or his property.' [Citation.] However, the procedures at a suppression hearing before a judge need not be the same as those available to a defendant at trial. [Citations.] Nonetheless, at a suppression hearing, the defendant must have a fair opportunity to litigate the claim. (See, e.g., *People v. Williams* (1988) 45 Cal.3d 1268, 1304, fn. 3 [248 Cal.Rptr. 834, 756 P.2d 221] [implicitly accepting the proposition that a defendant has a due process right to a full and fair suppression hearing].)" (*People v. Hansel* (1992) 1 Cal.4th 1211, 1219–1220 [4 Cal.Rptr.2d 888, 824 P.2d 694], bracketed portion in original.)

suppression motion need not be very specific in his or her motion about the inadequacy of the prosecution's justification because the prosecution bears the burden of proving the justification. Second, a defendant deprived of discovery in advance of the preliminary examination is not deprived of a statutory remedy because he or she has an opportunity to bring a renewed motion after the filing of the information. We disagree. While a defendant need not precisely specify *in his or her motion* why the prosecution will not be able to establish the requisite justification for a warrantless search or seizure, precluding the defense from discovering relevant information in advance of *the hearing* would seriously handicap the defendant's ability to *respond at the hearing* to the prosecution's presentation of evidence to support its justification. For instance, the defense will not be able to use a dispatch tape to impeach an officer's testimony at the hearing regarding the circumstances of a search if the defense cannot obtain discovery of the dispatch tape in advance of the hearing. The fact that Penal Code section 1538.5, *subdivision (i)* permits a defendant to litigate a *renewed* suppression motion after the filing of the information does nothing to vindicate the defendant's statutory right under Penal Code section 1538.5, *subdivision (f)* to pursue a suppression motion at the preliminary examination.

▮▮▮▮ The Attorney General contends that the *Mouchaourab* concurrence's analysis is also inapplicable. He claims that the due process guaranteed by the California Constitution is not at issue here "because the right to move to suppress is not grounded in the state due process clause but in the Fourth Amendment." This claim confuses procedural rights and substantive rights. A defendant seeks to vindicate his *substantive* right under the United States Constitution's Fourth Amendment at a suppression hearing by demonstrating that the evidence at issue was obtained in violation of the Fourth Amendment. (*People v. Newell* (1979) 93 Cal.App.3d 29, 36 [155 Cal.Rptr. 430].) The defendant's procedural due process right under the California Constitution entitles him to a full and fair opportunity to make that demonstration at the suppression hearing. (*People v. Hansel, supra*, 1 Cal.4th at p. 1219.) The issue before us is whether, when a defendant shows that he needs discovery in order to have a full and fair opportunity to litigate his suppression motion at the preliminary examination, the magistrate nevertheless lacks the power to grant such discovery. This issue clearly involves defendant's procedural due process right to a full and fair suppression hearing.

▮▮▮▮ The Attorney General also contends that the *Mouchaourab* concurrence's analysis is simply "incorrect" because Proposition 115's addition of section 30, subdivision (c) to article I of the California Constitution served to constitutionalize Chapter 10. Not so. That constitutional provision reads: "In order to provide for fair and speedy trials, discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the people through

the initiative process." (Cal. Const., art. I, § 30, subd. (c).) This constitutional provision merely establishes that discovery "shall be reciprocal in nature" and says nothing to suggest that it was intended to eliminate a criminal defendant's well-established right to due process at a statutorily authorized suppression hearing. We do not credit the Attorney General's challenge to the *Mouchaourab* concurrence's reasoning.

Accordingly, under *Mouchaourab*, the magistrate had the power to grant Magallan's discovery motion, and the superior court erred in granting the prosecution's petition.

## III. Disposition

Let a peremptory writ of mandate issue directing the superior court to vacate its June 29, 2009 order granting the prosecution's petition and to enter a new order denying the prosecution's petition. The temporary stay order is vacated.

Bamattre-Manoukian, Acting P. J., and McAdams, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 8, 2011, S191876.