Filed 8/3/23  In re Paige CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re DERICK PAIGE, on Habeas Corpus | B325982<br><br>Los Angeles County<br>Super. Ct. No. GA112033 |

ORIGINAL PROCEEDINGS on petition for writ of habeas corpus. Rupa S. Goswami, Judge. Petition granted.

Erika Anzoategui, Cynthia M. Janis and Patricia Fullinwider, Alternate Public Defenders, for Petitioner.

Collins + Collins, Tomas A. Guterres and Chandler A. Parker for Respondent.

George Gascon, District Attorney of Los Angeles County, and Elizabeth Marks, Deputy District Attorney, for Real Party in Interest.

## INTRODUCTION

In January 2023, Derick Paige filed a petition for writ of habeas corpus in this court challenging the trial court's order rescinding his bail. A different panel of this court summarily denied the petition a few days later. Paige then filed a petition for review in the California Supreme Court. In April 2023, the Supreme Court granted Paige's petition for review and transferred the case to this court with directions to vacate the summary denial order and issue an order to show cause. We have since complied with the Supreme Court's directions and received further briefing on the issues presented in Paige's petition for writ of habeas corpus.

In his petition, Paige contends the trial court abused its discretion by rescinding his bail because it did not comply with the requirements set forth in *In re Humphrey* (2021) 11 Cal.5th 135 (*Humphrey*) when rendering its decision. We agree. We therefore grant the petition, vacate the order rescinding Paige's bail, and remand the matter to the trial court with directions to hold a new hearing where it shall consider, and make findings on, Paige's bail consistent with *Humphrey* and its progeny, as well as this court's opinion. We decline Paige's requests for other relief, including his request to be released from custody, and express no opinion on his entitlement to bail or any other relief.

## BACKGROUND

On May 11, 2022, the Los Angeles County District Attorney filed a felony complaint charging Paige with a single count of

attempted murder. (Pen. Code,[1] § 664/187 subd. (a).) The complaint further alleged that, in committing the alleged offense, Paige personally used a firearm (§ 12022.5, subd. (a)) and personally inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)).

At the arraignment on May 23, 2022, Paige pled not guilty to the charge. Bail was set at $1.2 million.

On August 15, 2022, Paige moved for a formal bail review hearing under *Humphrey*. Although unsupported by evidence, Paige's motion is the sole document in the record describing the facts underlying the charge against him. The motion asserts Paige and the victim have been friends since childhood. In the late evening of May 3 or early morning of May 4, 2022, Paige shot the victim "in the left side of her torso" with a Tec-9 firearm while they were at a "'dope house' or 'hoarder house' where transient individuals would [go] to drink alcohol and get high." At the time, Paige was drunk, and the victim was smoking crack cocaine. A witness told law enforcement "there were no fights, arguments, or any type of confrontation[ ]" leading up to the incident.

By way of his motion, Paige asserted he cannot afford the set bail amount of $1.2 million. He also noted he was 45 years old, and that although he had several convictions for several "victimless offenses" related to his "long-standing drug problem[,]"[2] he had no history of bench warrants, as well as "no

---

1    All further undesignated statutory references are to the Penal Code.

2    Paige sustained the following prior convictions: possession of cocaine base for sale (Health & Saf. Code, § 11351.5) in 1999 and 2006; possession of an open container containing marijuana while driving a motor vehicle (Veh. Code, § 23222, subd. (b)) in

3

serious or violent history." He further expressed "willingness . . . to be placed on electronic monitoring awaiting trial in this case," and "welcome[d] any stay-away, no contact orders imposed by th[e] court as a condition of his release and is prepared to relocate to the Palmdale area, far from [the victim]'s residence[.]" Paige asked to be released on his own recognizance, or with bail not to exceed $200,000, along with imposition of any necessary nonfinancial conditions of release.

On August 16, 2022, the trial court held a hearing on Paige's motion. There, Paige's counsel acknowledged Paige was charged with "a serious offense[,]" but emphasized he "has no history of prior serious offenses." In addition, Paige's counsel pointed out the house where the incident took place had been "taken over by the county," and "nobody . . . still lives at that house[.]" Counsel also highlighted Page's willingness to comply with any stay away orders, submit to electronic monitoring, reside with his nephew in Los Angeles, and participate in a residential drug treatment program while awaiting trial.

In response to the arguments by Paige's counsel, the People did not present any evidence. Instead, the Deputy District Attorney stated: "[The] People's opposition to reduction of bail or [Paige's release on his own recognizance] is based solely on the high risk [to] public safety. This is a case where it is alleged that the defendant and several other individuals were in a home allegedly consuming narcotics when the defendant, unprovoked,

_____

2004; driving with 0.08 percent blood alcohol (Veh. Code, § 23152, subd. (b)) in 2005; and driving under the influence of an alcoholic beverage or a drug or under the combined influence of an alcoholic beverage and a drug (Veh. Code, § 21352, subd. (a)) in 2019.

pulled out a Tec-9 style 9 millimeter handgun. [¶] The victim and another witness stated that they were in fear and just, potentially, tried to leave. And at that point, unprovoked, the defendant shot the victim in the stomach one time. She was taken to the hospital by one of the witnesses. [¶] Based on . . . the public safety issue to the victim, to the other witnesses that were in the home, and to the general public at large, the People would oppose [Paige's release on his own recognizance] and/or bail." Noting Paige did not have any prior convictions for serious or violent felonies, the Deputy District Attorney asserted "th[e] charge alone in this incident poses a very severe public safety issue."

The trial court ordered Paige to be held without bail. In so doing, the trial court stated: "Under *Humphrey*, I only have three alternatives: [release Paige on his own recognizance], set affordable bail, or detain [with] no bail after making a clear and convincing evidentiary finding. [¶] I'm not concerned about Mr. Paige coming back to court. . . . [F]light risk is not my concern here. And if flight risk were my concern, I would set some form of affordable bail. [¶] My concern here is that this is a completely unprovoked attempted murder. And that causes me a great deal of concern because I don't have any way of preventing something like that from happening again. As [Paige's] counsel concedes, there were drugs and maybe other substances involved. It was an unprovoked attack on a woman, and it was a use of deadly force. [¶] Based on that . . . [and *In re Brown* (2022) 76 Cal.App.5th 296 (*Brown*)], the court finds by clear and convincing evidence that there are no less restrictive means to satisfy the purpose of ensuring public safety. And I will, therefore, enter a no bail order on this matter."

The minute order for the August 16, 2022 hearing states the trial court made the following orders and findings: "Upon consideration of the relevant factors of the case and of the defendant, including the defendant's ability to pay, the protection of the public and any complaining witness, the allegations and seriousness of the charged offense, the defendant's previous criminal record and history of compliance with court orders, and the likelihood that the defendant will appear at future court proceedings, the court finds by clear and convincing evidence that no less restrictive condition or combination of conditions of release will reasonably assure the safety of the public or victim and the defendant's appearance in court.[ ]Defendant is to be detained with no bail."

On September 28, 2022, Paige filed a petition for writ of habeas corpus in the superior court. The superior court construed the petition as a petition for writ of mandate and denied it on December 8, 2022. [3]

On January 27, 2023, Paige filed a petition for writ of habeas corpus in this court, which was summarily denied on February 3, 2023. Paige then filed a petition for review in the California Supreme Court. Subsequently, on April 12, 2023, the Supreme Court granted Paige's petition for review and transferred the case back to this court. Further, the Supreme Court directed this court to vacate the prior order denying Paige's

3      The superior court judge presiding over Paige's bail review hearing was acting as a magistrate, and therefore her actions were reviewable by the superior court on mandamus. (See *Magallan v. Superior Court* (2011) 192 Cal.App.4th 1444, 1453 ["The superior court is the court with jurisdiction to review the actions of a magistrate and issue a writ of mandate to a magistrate"].)

petition for writ of habeas corpus, and instructed this court to issue an order directing the Los Angeles County Sheriff's Department "to show cause why [Paige] should not be granted a new bail review hearing on the basis that the superior court did not adequately set forth the reasons for its decision on the record[.]"

Per the Supreme Court's instructions, on April 20, 2023, we vacated the prior order denying Paige's petition for writ of habeas corpus and issued an order to show cause directed to the Sheriff's Department. On May 18, 2023, the People, as real party in interest, filed a letter brief articulating their position on Paige's petition. Four days later, the Sheriff's Department filed a response to our April 2023 order stating it "defers to the District Attorney with respect to all matters pertaining to [Paige's] entitlement to bail[.]"

## DISCUSSION

## I.     Governing Legal Principles and Standard of Review

"[D]efendants charged with noncapital offenses are generally entitled to bail. [Citations.] But article I, section 12 [of the California Constitution] provides for exceptions in particular circumstances when a defendant is charged with at least one felony offense." (*In re White* (2020) 9 Cal.5th 455, 462 (*White*).) Of particular relevance here is the exception set forth in article I, section 12(b), that applies in cases of "[f]elony offenses involving acts of violence on another person . . . when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others[.]" (Cal. Const., art I, § 12, subd. (b).)

7

"A person who falls within the article I, section 12(b) exception does not have a right to bail, yet may nonetheless be granted bail—or release on the person's own recognizance—in the trial court's discretion." (*White, supra*, 9 Cal.5th at p. 469.) In deciding whether to exercise its discretion to deny bail, the trial court must follow "the general framework governing bail determinations[ ]" set forth by our Supreme Court in *Humphrey, supra*, 11 Cal.5th at p. 152.[4] Preliminarily, that framework provides that "[w]hen making any bail determination, a superior court must undertake an individualized consideration of the relevant factors. These factors include the protection of the public as well as the victim, the seriousness of the charged offense, the arrestee's previous criminal record and history of compliance with court orders, and the likelihood that the arrestee will appear at future court proceedings." (*Humphrey, supra*, at p. 152.) "Along with those primary considerations of victim and public safety, the court must assume the truth of the criminal charges." (*Id.* at p. 153.)

Under *Humphrey*, "a trial court must first determine whether an arrestee is a flight risk or a danger to public or victim safety. If the arrestee does pose one or both of these risks, then the court should consider whether 'nonfinancial conditions of

---

4　We agree with our colleagues in the First District that "[a]lthough *Humphrey* involved a claim of excessive bail and not a denial of bail under [article 12,] section 12(b) as here, the generality with which *Humphrey* laid out the . . . requirement[s]" discussed below "reasonably indicates the Supreme Court's contemplation that its holding applies to all orders for pretrial detention under section 12(b)." (*In re Harris* (2021) 71 Cal.App.5th 1085, 1096 (*Harris*), review granted March 9, 2022, S272632.)

release may reasonably protect the public and the victim or reasonably assure the arrestee's presence at trial.'" (*Brown, supra,* 76 Cal.App.5th at p. 305, quoting *Humphrey*, *supra*, 11 Cal.5th at p. 154.) "Although 'no condition of release can entirely *eliminate* the risk that an arrestee may harm some member of the public,' the [*Humphrey*] court observed, '[t]he experiences of those jurisdictions that have reduced or eliminated financial conditions of release suggest that releasing arrestees under appropriate nonfinancial conditions—such as electronic monitoring, supervision by pretrial services, community housing or shelter, stay-away orders, and drug and alcohol testing and treatment [citations]—may often prove sufficient to protect the community.'" (*Brown*, *supra*, at p. 305, quoting *Humphrey*, *supra*, at p. 154, original italics.)

"Having considered potential nonfinancial conditions, if the trial court nonetheless concludes money bail is 'reasonably necessary' to protect the public and ensure the arrestee's presence at trial, then bail must be set 'at a level the arrestee can reasonably afford' unless the court concludes, by clear and convincing evidence, that no nonfinancial condition in conjunction with affordable money bail can reasonably protect public safety or arrestee appearance." (*Brown*, *supra*, 76 Cal.App.5th at pp. 305-306, quoting *Humphrey*, *supra*, 11 Cal.5th at p. 154.) These requirements ensure pretrial detention "doesn't depend on the arrestee's financial condition. Rather, it depends on the insufficiency of less restrictive conditions to vindicate compelling government interests: the safety of the victim and the public more generally or the integrity of the criminal proceedings." (*Humphrey*, *supra*, at p. 143.)

"A court's procedures for entering an order resulting in pretrial detention must also comport with other traditional notions of due process to ensure that when necessary, the arrestee is detained 'in a fair manner.' [Citations.] Among those fair procedures is the court's obligation to set forth the reasons for its decision on the record and to include them in the court's minutes. [Citation.] Such findings facilitate review of the detention order, guard against careless or rote decisionmaking, and promote public confidence in the judicial process." (*Humphrey*, *supra*, 11 Cal.5th at pp. 155-156.)

"[W]e review a trial court's ultimate decision to deny bail for abuse of discretion. [Citations.] Under this standard, a trial court's factual findings are reviewed for substantial evidence, and its conclusions of law are reviewed de novo. [Citation.] An abuse of discretion occurs when the trial court, for example, is unaware of its discretion, fails to consider a relevant factor that deserves significant weight, gives significant weight to an irrelevant or impermissible factor, or makes a decision so arbitrary or irrational that no reasonable person could agree with it." (*White*, *supra*, 9 Cal.5th at pp. 469-470.)

## II.    Analysis

Paige contends the trial court erred by rescinding his bail because it did not comply with the requirements delineated in *Humphrey*. Specifically, he argues the court failed to: (1) analyze whether harm was reasonably likely to occur if he were released; (2) analyze whether less restrictive alternatives to detention would be insufficient to protect the government's interest in ensuring the safety of the public and the victim; and (3) state on the record and in the minute order the reasons underlying its finding that pretrial detention was required. As discussed below,

10

we agree with Paige's contentions and conclude the trial court did not comply with *Humphrey* in deciding to detain him without bail.

With respect to his first point, Paige correctly observes the trial court did not analyze whether the public and/or the victim would be at risk of harm if he were released. Instead, at the August 2022 hearing, the court stated: "My concern here is that this is a completely unprovoked attempted murder. And that causes me a great deal of concern because I don't have any way of preventing something like that from happening again." These comments show that, in rescinding bail, the trial court focused largely on its asserted inability to completely prevent a similar incident from occurring. As noted above, however, the *Humphrey* court observed: "[N]o condition of release can entirely *eliminate* the risk that an arrestee may harm some member of the public. [Citation.] In choosing between pretrial release and detention, we recognize that absolute certainty—particularly at the pretrial stage, when the trial meant to adjudicate guilt or innocence is yet to occur—will prove all but impossible." (*Humphrey*, *supra*, 11 Cal.5th at p. 154, original italics.) The Supreme Court therefore directed trial courts to "focus instead on risks to public or victim safety . . . that are reasonably likely to occur." (*Ibid*.) Thus, the record reflects the trial court may have given "significant weight to an irrelevant or impermissible factor," i.e., its inability to ensure with certainty the safety of the victim and the public, and thus abused its discretion in rescinding his bail. (*White*, *supra*, 9 Cal.5th at p. 470.)

With respect to Paige's second and third arguments, *Harris*, *supra*, 71 Cal.App.5th 1085, and *Brown*, *supra*, 76 Cal.App.5th 296, are instructive. In *Harris*, the petitioner was

11

implicated as the perpetrator of a violent rape. (*Harris*, *supra*, at p. 1091.) After the trial court set bail at $5 million, the petitioner filed a bail motion, arguing under *Humphrey* that he should be released on his own recognizance because he was indigent, and there was no indication he posed a flight or safety risk. (*Id.* at p. 1092.) At the hearing on the motion, the petitioner, through counsel, argued he could not afford bail as set, and asked for release on his own recognizance with various nonfinancial conditions, such as a no contact order with the victim, Global Position System tracking, and limitation of his use of dating websites to address the People's concern that his ongoing scarf fetish could lead him to engage in conduct similar to the actions giving rise to the charges against him. (*Id.* at p. 1094.) The trial court denied the motion. (*Ibid.*) Thereafter, the petitioner sought a writ of habeas corpus in the appellate court. (*Id.* at p. 1091.)

The appellate court conditionally vacated the denial order and remanded the case to the trial court. (*Harris*, *supra*, 71 Cal.App.5th at p. 1109.) It noted that although the trial court did not expressly find less restrictive alternatives to detention would be insufficient to protect the government's interests in public or victim safety and/or the arrestee's appearance in court, "such a finding could be implicit and inferred from the record." (*Id.* at p. 1104.) The appellate court then held, however: "[E]ven though the general presumptions in favor of a judgment or order might otherwise support a finding made sub silentio, *Humphrey* specifically requires, as a matter of procedural due process, that a court entering a pretrial detention order set forth 'the reasons for its decision on the record and to include them in the court's minutes.' [Citation.] Thus, the reasons supporting a denial of bail cannot be implied.'" (*Id.* at pp. 1104-1105.)

Subsequently, the appellate court determined the trial court did not satisfy the specified requirements. (*Harris*, *supra*, 71 Cal.App.5th at p. 1105.) Specifically, it noted the trial court "did not actually address any less restrictive alternatives to pretrial detention and did not articulate its analytical process as to why such alternatives could not reasonably protect the government's interests." (*Ibid.*) The appellate court ultimately concluded: "[T]he [trial] court's failure to articulate its evaluative process requires that we speculate as to why the court believed that no nonfinancial conditions could reasonably protect the interests in public or victim safety. As such, the record here does not permit meaningful appellate review." (*Ibid*, fn. omitted.)

In *Brown*, the petitioner was charged with felony offenses after allegedly sexually abusing two children. (*Brown*, *supra*, 76 Cal.App.5th at p. 299.) Bail was initially set at $1.45 million, but was increased to $3.45 million after an amended felony complaint was filed. (*Ibid.*) At a subsequent hearing, the trial court reduced bail to $2.45 million. (*Id.* at p. 300.)

Several months later, the petitioner moved for release on his own recognizance, or, alternatively, reduced bail not exceeding $1,000. (*Brown*, *supra*, 76 Cal.App.5th at p. 300.) Acknowledging he had been accused of serious and violent crimes, the petitioner maintained he was entitled to the relief sought because he was indigent and would accept nonfinancial conditions of release, including electronic monitoring, community housing, home detention, treatment and education programs, a pretrial case manager, and a protective order. (*Ibid.*) The trial court denied the motion, finding "'there are no lesser means of protecting the public, in that [the offenses] seemed to be done in the home with family members, [and] the court can't stop family

13

members from seeing the defendant.'" (*Id.* at p. 301.) The petitioner then challenged the trial court's ruling by filing a petition for writ of mandate in the appellate court, which the court treated as a petition for writ of habeas corpus. (*Ibid.*)

The appellate court granted the petition and remanded the case to the trial court to conduct a new bail hearing consistent with *Humphrey*. (*Brown*, *supra*, 76 Cal.App.5th at p. 309.) In arriving at this conclusion, the *Brown* court explained: "Here, there was no evidence proffered in the trial court to support the contention that harm to the public was reasonably likely to occur if [the petitioner] were released. The trial court failed to address any of the specific nonfinancial conditions proposed by [the petitioner] or to indicate, even in general, why nonfinancial conditions of release (such as a stay away or no contact order, home detention, electronic monitoring[,] or surrender of [the petitioner's] class A driver's license) would be insufficient to protect the victims or the public or obviate the risk of flight. On this record we cannot conclude there was sufficient evidence to support a finding by clear and convincing evidence that less restrictive alternatives to detention could not reasonably protect the public or victim safety." (*Id.* at p. 307.)

Here, as in *Harris* and *Brown*, Paige expressed willingness to comply with any and all nonfinancial conditions of release, including stay away and no contact orders, relocation to Los Angeles or Palmdale, electronic monitoring, and participation in residential drug treatment. (See *Harris*, *supra*, 71 Cal.App.5th at p. 1094; see also *Brown*, *supra*, 76 Cal.App.5th at p. 300.) Subsequently, in deciding pretrial detention was necessary, the trial court expressed concern the charge stemmed from "an unprovoked attack" involving "drugs and maybe other

14

substances[,]" and "f[ound] by clear and convincing evidence that there are no less restrictive means to satisfy the purpose of ensuring public safety." In so doing, however, the court did not "address any of the specific nonfinancial conditions proposed by [Paige.]" (*Brown*, *supra*, at p. 307; see also *Harris*, *supra*, at p. 1105.) And, while the court noted its concerns with the "unprovoked" nature of the shooting and Paige's involvement with "drugs and maybe other substances[,]" it did not "articulate its analytical process" connecting those concerns to its finding that all potential less restrictive alternatives to detention, including those suggested by Paige, were insufficient to protect the government's interest in public safety. (*Harris*, *supra*, at p. 1105.) Nor did the court explain its "evaluative process" in the minute order. (*Ibid*.) There, the trial court represented it considered the factors discussed in *Humphrey*, *supra*, 11 Cal.5th at pp. 152-153, but did not explain how it applied the facts in this case to its analysis of those factors to conclude pretrial detention was warranted. Further, here, as in *Brown*, there was no evidence proffered or presented at the August 2022 hearing to support a finding that no less restrictive alternatives would adequately ensure public safety. (See *Brown*, *supra*, at p. 307.)

Based on this record, we cannot conclude the trial court "ma[d]e an individualized determination that . . . detention is necessary to protect victim or public safety[.]" (*Humphrey*, *supra*, 11 Cal.5th at p. 156.) Nor can we conclude the court "set forth the reasons for its decision on the record and . . . include[d] them in [the] minutes." (*Id.* at p. 155.) Instead, the record demonstrates that in rescinding Paige's bail, the trial court "fail[ed] to consider a relevant factor that deserves significant weight," i.e., the sufficiency or insufficiency of less restrictive alternatives to

15

vindicate the government's interests in victim and public safety (*White*, *supra*, 9 Cal.5th at p. 470), and did not follow the "fair procedures" that ensure the entry of "an order resulting in pretrial detention . . . comport[s] with . . . traditional notions of due process[.]" (*Humphrey*, *supra*, at p. 155.)

In sum, for the reasons discussed above, the record reflects the trial court did not comply with the requirements set forth in *Humphrey* when deciding to hold Paige without bail. Accordingly, we conclude the trial court abused its discretion in rescinding Paige's bail, and that Paige is entitled to a new bail review hearing conducted in a manner consistent with *Humphrey* and its progeny. (See *Harris*, *supra*, 71 Cal.App.5th at pp. 1106, 1109; see also *Brown*, *supra*, 76 Cal.App.5th at p. 309.)[5]

---

5    In light of this conclusion, we need not address Paige's argument that, pursuant to *In re Alberto* (2002) 102 Cal.App.4th 421, the trial court, who did not preside over the arraignment and did not issue the order initially setting bail at $1.2 million, "lacked the authority to overrule the arraignment court's bail order[ ]" because "[a] judge cannot . . . overturn another judge's bail order based on facts already considered by the first judge[.]"

## DISPOSITION

The petition for writ of habeas corpus is granted. The Los Angeles Superior Court is directed to vacate its August 16, 2022 order denying Paige's motion for formal bail review hearing and rescinding his bail. The court is further directed to hold a new hearing, where it shall consider, and render findings on, Paige's bail in a manner consistent with *Humphrey* and its progeny, as well as this court's opinion. We decline Paige's requests for other relief, including his request to be released from custody, and express no opinion on his entitlement to bail or any other relief.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.