Opinion
KIRSCHNER, J.*
Penal Code section 991[1] permits an in-custody defendant to require the arraigning magistrate to determine whether there is probable cause to believe the defendant committed a public offense. (§ 991, subd. (a).) If the magistrate finds no such probable cause, the defendant is entitled to dismissal of the complaint. (§ 991, subd. (d).) The issue raised in this appeal is whether section 991 vests the trial court with authority to dismiss only some of the charges for lack of probable cause, or whether it must dismiss the complaint in its entirety or not at all. We conclude that section 991 permits the court to dismiss individual charges from the complaint.
FACTUAL AND PROCEDURAL BACKGROUND
Defendant Douglas Lee McGowan was arrested at 1:30 a.m. on May 9, 2014. At the time, he was wrapped in a blanket and seated underneath the Santa Monica Pier. He was surrounded by various personal items, including two milk crates. The People filed a complaint charging him with (1) camping in a prohibited public place (Santa Monica Mun. Code, § 4.08.095, subd. (a)), (2) possession of a milk crate (Pen. Code, § 565), and (3) loitering under the Santa Monica Pier (Santa Monica Mun. Code, § 3.36.100). The defense filed *380 a motion to dismiss all charges pursuant to section 991. At argument, the trial court ordered further briefing on whether it had the authority to dismiss only two of the three counts. It ultimately dismissed counts one and three, finding probable cause to support the charge in count two only, possession of a milk crate. In a published decision, the Appellate Division of the Superior Court of Los Angeles County reversed, holding that section 991 does not vest the trial court with authority to dismiss anything less than the entire complaint. We ordered jurisdiction of the matter transferred to this court pursuant to our authority under California Rules of Court, rule 8.1002.
At oral argument, the parties informed the court that the charges against McGowan have been resolved, but that he remained in custody for some time pending resolution, as he was unable to post bond. Therefore, this matter has been rendered moot. However, “[wjhere questions of general public concern are involved, particularly in the area of the supervision of the administration of criminal justice, we may reject mootness as a bar to a decision on the merits.” (In re Walters (1975) 15 Cal.3d 738, 744 [126 Cal.Rptr. 239, 543 P.2d 607] (Walters); see In re Fluery (1967) 67 Cal.2d 600, 601 [63 Cal.Rptr. 298, 432 P.2d 986].)
DISCUSSION
A. Standard of Review and Rules of Statutory Construction
On appeal, questions of law and statutory interpretation are reviewed de novo. (People v. Kurtenbach (2012) 204 Cal.App.4th 1264, 1276 [139 Cal.Rptr.3d 637].) “ ‘Under settled canons of statutory construction, in construing a statute we ascertain the Legislature’s intent in order to effectuate the law’s purpose. [Citation.] We must look to the statute’s words and give them their usual and ordinary meaning. [Citation.] The statute’s plain meaning controls the court’s interpretation unless its words are ambiguous.’ [Citation.]” (People v. Robinson (2010) 47 Cal.4th 1104, 1138 [104 Cal.Rptr.3d 727, 224 P.3d 55].) “If, however, the language supports more than one reasonable construction, we may consider ‘a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.’ [Citation.] Using these extrinsic aids, we ‘select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.’ [Citation.]” (People v. Sinohui (2002) 28 Cal.4th 205, 211-212 [120 Cal.Rptr.2d 783, 47 P.3d 629].)
*381 B. Penal Code Section 991
Section 991 states in part: “(a) If the defendant is in custody at the time he appears before the magistrate for arraignment and, if the public offense is a misdemeanor to which the defendant has pleaded not guilty, the magistrate, on motion of counsel for the defendant or the defendant, shall determine whether there is probable cause to believe that a public offense has been committed and that the defendant is guilty thereof. [¶] . . . [¶] (d) If, after examining these documents, the court determines that there exists probable cause to believe that the defendant has committed the offense charged in the complaint, it shall set the matter for trial. [¶] If the court determines that no such probable cause exists, it shall dismiss the complaint and discharge the defendant. [¶] (e) Within 15 days of the dismissal of a complaint pursuant to this section the prosecution may refile the complaint.”
1. Plain Meaning
The People argue that the statute unambiguously authorizes the court to dismiss “the complaint,” not individual counts, and not anything short of the entire complaint. We disagree. The singular term “the complaint” is not defined, and throughout the Penal Code, “the singular number includes the plural, and the plural the singular.” (§ 7.) The Supreme Court’s interpretation of other singular terms — such as “an action” or “the indictment or information” — to permit dismissal of individual counts in related Penal Code provisions is further evidence that section 991’s use of the singular term “the complaint” is not unambiguously dispositive.
Section 1385, subdivision (a) permits a trial court to dismiss “an action” in furtherance of justice. The statute is silent as to the dismissal of individual charges in an action. Nonetheless, in interpreting this provision, the Supreme Court has stated that “[t]he authority to dismiss the whole includes, of course, the power to dismiss or ‘strike out’ a part. [Citation.]” (People v. Burke (1956) 47 Cal.2d 45, 51 [301 P.2d 241], disapproved on other grounds in People v. Sidener (1962) 58 Cal.2d 645, 647 [25 Cal.Rptr. 697, 375 P.2d 641].) To this end, the high court has “consistently interpreted ‘action’ to mean the ‘individual charges and allegations in a criminal action’ [citations].” (In re Varnell (2003) 30 Cal.4th 1132, 1137 [135 Cal.Rptr.2d 619, 70 P.3d 1037]; see People v. Casper (2004) 33 Cal.4th 38, 45 [14 Cal.Rptr.3d 43, 90 P.3d 1203] [“Because ‘[t]he authority to dismiss the whole includes, of course, the power to dismiss or “strike out” a part’ [citation], the trial court’s power under section 1385 to dismiss the entire action necessarily includes the power to dismiss a part of the action . . . .”]; People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 508 [53 Cal.Rptr.2d 789, 917 P.2d 628] [“we have construed section 1385(a) as permitting a judge to dismiss not only an entire case, but also a *382 part thereof . . .”]; People v. Campos (2011) 196 Cal.App.4th 438, 450 [126 Cal.Rptr.3d 274] [“This power to dismiss [under section 1385] extends to the entire action as well as to individual charges and allegations in the action.”].)
Section 1385 is not the only such example. While section 991 controls probable cause determinations in misdemeanor cases, section 995 governs probable cause determinations in felony cases. Like section 991, section 995 employs the singular form and provides that “the indictment or information shall be set aside” if the trial court concludes a defendant was indicted or committed without probable cause. (§ 995, subd. (a).) It, too, has been interpreted to permit the setting aside of a portion of the indictment or information. (See People v. Superior Court (Mendella) (1983) 33 Cal.3d 754, 761, fn. 6 [191 Cal.Rptr. 1, 661 P.2d 1081] (Mendella) [“It is, of course, well settled that a defendant’s challenge under section 995 need not be directed to the entire information but may instead attack only portions thereof.”], superseded by statute on other grounds as stated in In re Jovan B. (1993) 6 Cal.4th 801, 814, fn. 8 [25 Cal.Rptr.2d 428, 863 P.2d 673]; People v. Fraijo (1977) 78 Cal.App.3d 977, 981 [144 Cal.Rptr. 424] [noting that § 995 has been interpreted as permitting the dismissal of a count or counts that are part of a broader information, even though the statute does not expressly authorize setting aside less than the entire information].)
That section 991 deals with in-custody defendants, while sections 995 and 1385 deal with both in-custody and out-of-custody defendants, does not render section 991’s words, “the complaint,” unambiguous. In fact, the in-custody versus out-of-custody distinction is not relevant to an ambiguity determination. And if the People were correct that the term “the complaint” necessarily and unambiguously means that only an entire complaint may be dismissed, then the long line of cases interpreting sections 995 and 1385 would be wrong. We decline to reach that conclusion.
Furthermore, “ ‘it is well settled that the statutes and codes blend into each other, and are to be regarded as constituting but a single statute .... Accordingly, statutes which are in pari materia should be read together and harmonized if possible.’ ” (People v. Squier (1993) 15 Cal.App.4th 235, 240 [18 Cal.Rptr.2d 536], citations omitted.) As evidenced in the legislative history discussed below, the Legislature intended for sections 991 and 995 to serve analogous purposes (to weed out unsupported charges prior to trial) in the misdemeanor and felony contexts. We therefore construe the sections harmoniously.
2. Legislative History
Where the statutory language is ambiguous, we look to extrinsic aids such as the legislative history and public policy to inform our interpretation of the *383 statutory language. (People v. Sinohui, supra, 28 Cal.4th 205 at p. 212.) The appellate division assumed section 991 was enacted for the sole purpose of codifying In re Walters, supra, 15 Cal.3d 738. In fact, section 991 goes well beyond Walters.
Undoubtedly, section 991 was enacted as a partial response to Walters, which followed the United States Supreme Court decision in Gerstein v. Pugh (1975) 420 U.S. 103 [43 L.Ed.2d 54, 95 S.Ct. 854] (Gerstein). Gerstein held that the Fourth Amendment to the United States Constitution requires a “timely judicial determination of probable cause as a prerequisite to detention.” (Gerstein, at p. 126.) This was because pretrial confinement was a significant restraint on liberty and could not be imposed without a judicial determination of probable cause. (Id. at p. 114.) The court noted that even pretrial release could be accompanied by burdensome conditions that amounted to a significant restraint on liberty. (Ibid.)
Following Gerstein, the Supreme Court held in Walters that “a judicial determination of probable cause to hold an arrestee for trial on a misdemeanor charge must be made if the arrestee requests that determination, unless pending trial he is released on his own recognizance.” (Walters, supra, 15 Cal.3d at pp. 742-743, fn. omitted.) Based on an analysis of Walters and Gerstein, the appellate division concluded that section 991’s sole purpose was to implement Gerstein'& constitutional requirement that a magistrate promptly determine if there is probable cause to believe the defendant committed “a crime” before forcing him or her to await trial while in custody. According to the appellate division, this goal requires the trial court to evaluate the complaint as a whole to determine whether there is probable cause to believe the defendant committed any of the charged crimes.
However, it is also clear the Legislature intended to, and did, go beyond merely parroting and codifying Walters. Unlike Walters, section 991 (a) requires dismissal of the complaint along with discharge of the defendant if there is no probable cause to believe the defendant committed the misdemeanor, (b) requires the court to set the matter for trial if it determines probable cause exists, (c) provides the prosecution may refile the complaint within 15 days of dismissal, (d) bars further prosecution upon a second dismissal, and (e) requires the court to consider police reports or the record of citizen complaints, but not live witnesses or cross-examination, in determining probable cause. (§ 991, subd. (a).) None of these provisions of section 991 are contemplated by Walters.
The legislative history confirms that section 991 was intended to go beyond Walters. The provision was enacted October 1, 1980, “to create a means for eliminating groundless misdemeanor complaints before a case goes *384 to trial and to codify . . . Walters.” (Sen. Com. on Judiciary, Analysis of Assem. Bill. No. 2931 (1979-1980 Reg. Sess.) as amended May 7, 1980, p. 2.) As such, the purpose of section 991 was twofold: (1) to eliminate groundless complaints and (2) to codify Walters.
In fact, the legislative history is replete with evidence that section 991 was intended not only to codify Walters, but also to weed out groundless charges. The Assembly Committee on Criminal Justice’s bill analysis describes the bill’s background and purpose as follows: “Persons accused of felony offenses have a right to a hearing before being held to answer on the charges. The hearing is to determine whether there is reasonable cause to believe a felony has been committed by the defendant. The purpose of the preliminary hearing is to weed out groundless or unsupported charges (Witkin, Ca. Crim. Pro., p. 128). Persons accused of misdemeanors and persons who waive their right to a preliminary hearing do not have a right of review of the charges against them prior to trial. [¶] . . . [¶] 1. Currently there is no procedure to weed out groundless misdemeanor complaints prior to trial. Proponents argue that this bill would permit the expeditious dismissal of unsupported or frivolous charges. Proponents indicate that certain indigents accused of misdemeanors can be in custody for 30 days before groundless charges can be weeded out.” (Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) Apr. 21, 1980, pp. 1-2, italics added; see Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) Apr. 28, 1980, pp. 1-2 [same]; Sen. Judiciary Com., Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) July 9, 1980, p. 2 [“Persons accused of felony offenses have a right to a hearing before being held to answer on the charges. The hearing is to determine whether there is reasonable cause to believe a felony has been committed by the defendant. The purpose of the preliminary hearing is to weed out groundless or unsupported charges (Witkin, Ca. Crim. Pro., p. 128). Persons accused of misdemeanors and persons who waive their right to a preliminary hearing do not have a right of review of the charges against them prior to trial. [¶] Currently there is no procedure to weed out groundless misdemeanor complaints prior to trial. Proponents argue that this bill would permit the expeditious dismissal of unsupported or frivolous charges. Proponents indicate that certain indigents accused of misdemeanors can be in custody for 30 days before groundless charges can be weeded out.”]; Sen. Democratic Caucus, Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) as amended July 9, 1980, p. 1 [“Proponents argue that this bill establishes a procedure for the expeditious dismissal of unsupported or frivolous charges. They also argue that, under the present system, people accused of misdemeanors are in custody for as long as 30 days before groundless charges can *385 be ascertained. [¶] Opponents argue that preliminary hearings for misdemeanors are unnecessary given existing procedures for challenging probable cause. Opponents are also concerned that these hearings would only add to court congestion.”].)
These legislative analyses evince the Legislature’s desire to create a procedural mechanism to “weed out groundless misdemeanor complaints prior to trial” and to facilitate the “expeditious dismissal of unsupported or frivolous charges.” The legislative history also indicates the Legislature intended that section 991 would serve a function similar to that of felony preliminary hearings, which “is to weed out groundless or unsupported charges.” (See People v. Plengsangtip (2007) 148 Cal.App.4th 825, 835 [56 Cal.Rptr.3d 165] [purpose of a preliminary hearing is to “ ‘assure that a person is not detained for a crime that was never committed,’ ” and “ ‘ “to weed out groundless or unsupported charges” ’ ”].)
Thus, throughout the legislative history, the probable cause hearing is referred to as “preliminary hearings for misdemeanors.” (See Sen. Democratic Caucus, Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) as amended July 9, 1980, p. 1.) The Assembly Committee on Criminal Justice’s analysis of the bill is captioned, “SUBJECT; Preliminary Hearing for Misdemeanor Offenses.” (Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) Apr. 21, 1980, p. 1; see Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) Apr. 28, 1980, p. 1 [same].) Likewise, the Senate Committee on Judiciary’s analysis of the bill is titled, “MISDEMEANORS [¶]— PRELIMINARY HEARINGS — .” (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) as amended May 7, 1980, p. 1.)
In fact, proponents and opponents of the bill alike recognized that the provision would establish a right to “preliminary hearings” in misdemeanor cases. (See Los Angeles County Municipal Court Judges’ Assn., letter to Assemblyman Bill McVittie, Apr. 11, 1980 [“This bill would establish a preliminary hearing for misdemeanors.”]; Cal. District Attorneys Assn., letter to Assemblyman Elihu M. Harris, July 17, 1980 [noting that the proposed bill “provide[s] an in-custody defendant with [the] right to a preliminary hearing where the charged offense is a misdemeanor”]; Los Angeles County Municipal Court Judges’ Assn., letter to Sen. Bob Wilson, June 13, 1980 [“This bill would establish a preliminary hearing for misdemeanors.”].)
This terminology makes clear that the Legislature contemplated that section 991 probable cause hearings would serve a purpose similar to that of preliminary hearings in felony cases, i.e., “ ‘assure that a person is not detained for a crime that was never committed’ ” and “ ‘ “to weed out *386 groundless or unsupported charges.” ’ ” (People v. Plengsangtip, supra, 148 Cal.App.4th at p. 835.) Because sections 991 and 995 were meant to serve analogous purposes in the misdemeanor and felony contexts, the rules of statutory construction demand that we harmonize the two provisions whenever possible. (See People v. Squier, supra, 15 Cal.App.4th 235, 240-241 [“statutes which are in pari materia should be read together and harmonized if possible”].) Thus, in keeping with the Supreme Court’s conclusion that section 995 permits the setting aside of individual charges within a felony indictment or information, we conclude that section 991 permits the dismissal of individual charges from a misdemeanor complaint. Certainly, section 991’s “weeding out” function would be poorly served if the trial court were required to analyze misdemeanor complaints as a whole, rather than on a per-charge basis.
Contrary to the People’s position, there is no evidence in the legislative history that the Legislature ultimately rejected the proponents’ position that section 991 would allow trial courts to “weed out” groundless charges. The most recent evidence of the Legislature’s dual intent is found in the analyses by the Senate Democratic Caucus and the Senate Republican Caucus. These analyses are dated within two days before the Senate voted on the bill. The Senate Democratic Caucus’s analysis states: “Proponents argue that this bill establishes a procedure for the expeditious dismissal of unsupported or frivolous charges.” (Sen. Democratic Caucus, Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) p. 1.) Likewise, the “comments” section of the Senate Republican Caucus’s analysis states: “Currently there is no procedure to weed out groundless misdemeanor complaints prior to trial. Proponents argue that this bill would permit the expeditious dismissal of unsupported or frivolous charges. Proponents indicate that certain indigents accused of misdemeanors can be in custody for 30 days before groundless charges can be weeded out.” (Sen. Republican Caucus, analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) p. 2.)[2] The enrolled bill report was prepared by the Legal Affairs Department of the Governor’s Office after the bill passed both the Senate and the Assembly. It confirms that section 991 was meant to be broader than Walters in that it requires the dismissal of charges where probable cause is not established. It states: “This bill goes beyond the Walters decision and requires that the charges be dismissed if probable cause is not established, although the prosecution may thereafter *387 refile the complaint within 15 days.” (Governor’s Off., Enrolled Bill Rep. on Assem. Bill No. 2931 (1979-1980 Reg. Sess.) Sept. 15, 1980, p. 1.)
This legislative history belies the appellate division’s holding that “[t]he statute is not a mechanism to extricate certain unsupportable charges from an otherwise legitimate complaint” but rather “simply an implementation of Gerstein’s constitutional requirement that a magistrate promptly determine there is probable cause to believe the defendant committed ‘a crime’ before forcing him or her to await trial while in custody.” (People v. McGowan (2015) 235 Cal.App.4th Supp. 1, 6 [185 Cal.Rptr.3d 532].) We disagree with the notion that the legislative documents contain “inaccuracies” that somehow suggest the Legislature did not intend what it said.[3] However, even assuming the legislative history is somehow incorrect or ambiguous, we would still be required to interpret section 991 as permitting count-by-count dismissals, so as to avoid an absurd consequence.
Taken to its logical conclusion, the appellate division’s all-or-nothing decision would result in a situation where a trial court presented with a multi-count complaint determines there is no probable cause for all but one of the charges. Under the appellate division’s decision, the defendant would be forced to stand trial on all of the charges, including the ones for which the court has already determined there is no probable cause. Nor is it accurate that the trial court may satisfy its section 991 obligations by examining only one charge in a multi-charge complaint. Section 991, subdivision (d) states in part: “If, after examining these documents, the court determines that there exists probable cause to believe that the defendant has committed the offense charged in the complaint, it shall set the matter for trial. [¶] If the court determines that no such probable cause exists, it shall dismiss the complaint and discharge the defendant.” This provision requires the trial court to determine whether probable cause exists for each offense in the complaint. Under the People’s position, the trial court may determine that no probable *388 cause exists for one or more of the offenses, but nonetheless set them for trial.[4] When construing statutes, we select the statutory construction that “avoid[s] an interpretation that would lead to absurd consequences.” (People v. Sinohui, supra, 28 Cal.4th at p. 212.) In the words of Walters, “We elect not to approve a procedure for determining compliance with a constitutional mandate when that procedure is vulnerable to attack on grounds which suggest the possibility of a type of star-chamber determination, particularly when the alternative poses little additional burden on the administration of justice.” (Walters, supra, 15 Cal.3d at p. 749.)
We agree with the defense that the section must be interpreted to permit the trial courts to dismiss not only an entire complaint, but also individual charges within the complaint, if it finds the charges are not supported by probable cause.
3. Public Policy
Many of the public policy objectives that underpin section 995 also support a reading of section 991 that permits trial courts to dismiss individual charges from a complaint. The Supreme Court has stated that preliminary hearings and section 995 motions “operate as a judicial check on the exercise of prosecutorial discretion” and help ensure that the defendant is not charged excessively. (Mendella, supra, 33 Cal.3d at p. 759.) Not only do excessive and unfounded charges confer a “tactical advantage . . . upon the prosecutor in respect to plea bargaining,” they also subject defendants to prejudicial introduction of “ ‘evidence concerning allegations that should have been “weeded out” ’ ” in pretrial proceedings. (Id. at pp. 760-761.)
These policy considerations apply equally in the misdemeanor context. We do not suggest that prosecutors regularly and inappropriately overcharge misdemeanor defendants. “ ‘A prosecutor abides by elementary standards of fair play and decency by refusing to seek indictments until he or she is completely satisfied the defendant should be prosecuted and the office of the prosecutor will be able to promptly establish guilt beyond a reasonable doubt.’ [Citations.]” (People v. Nelson (2008) 43 Cal.4th 1242, 1256 [78 Cal.Rptr.3d 69, 185 P.3d 49].)
*389 However, for reasons of fundamental fairness, we interpret rules so as to discourage, rather than encourage, abuses of prosecutorial discretion. (See, e.g., People v. Spicer (2015) 235 Cal.App.4th 1359, 1377 [186 Cal.Rptr.3d 158] [interpreting rule so as not to encourage overcharging by prosecutors].) Permitting the trial court to “weed out” unfounded misdemeanor charges in response to a section 991 motion helps preserve fairness in the plea bargaining process by ensuring that custodial, misdemeanor defendants do not bargain under a cloud of unfounded charges. (See Mendella, supra, 33 Cal.3d at p. 760 [noting that unfounded allegations “ ‘may constitute powerful bargaining tools for the prosecutor’ ” and cause the defendant to “ ‘remain under the threat of a long sentence during the entire plea negotiation process’ ”].) Undoubtedly, fairness in plea bargaining is equally important in cases involving custodial and non-custodial defendants. However, custodial defendants are especially vulnerable in the plea bargaining process, as they are more likely to seek and accept a plea bargain as a means of escaping confinement.
Similarly, the dismissal of unfounded charges ensures that bail is appropriately set. Bail is fixed according to the charges alleged, so the dismissal of some charges may justify reduced bail or release on a defendant’s own recognizance. For example, a single complaint may charge a defendant with misdemeanors and an infraction. If a magistrate finds no probable cause for the misdemeanors, the only charge remaining would be an infraction, for which no jail time may be imposed. (§ 19.6 [“An infraction is not punishable by imprisonment.”].) In that case, pretrial confinement is assuredly not justified in the vast majority of cases. Yet, the defendant in this scenario would remain in jail pending trial if the People were correct that all charges against a defendant must stand unless there is no probable cause to support any of the counts.
As with felony charges, dismissal of unfounded misdemeanor charges also protects custodial defendants from the introduction of prejudicial or time-consuming evidence at trial, when that evidence is relevant only to charges that should have been “weeded out” in pretrial proceedings. (See Mendella, supra, 33 Cal.3d at pp. 760-761.) It also promotes judicial economy, allowing courts to avoid trials on unfounded charges.
In the event of a dismissal under section 991, the prosecution is permitted to refile the complaint within 15 days of dismissal. (§ 991, subd. (e).) Nonetheless, the People argue that they could be foreclosed from refiling misdemeanor charges dismissed on a count-by-count basis. They point out that, following dismissal of some of the charges, a defendant may plead guilty to the remaining charges even without the prosecutor’s consent. (People v. Superior Court (Jurado) (1992) 4 Cal.App.4th 1217, 1230 [6 *390 Cal.Rptr.2d 242] (Jurado).) The People argue that a defendant’s decision to plead guilty to the remaining charges may trigger the “multiple prosecution” bar set forth in Kellett v. Superior Court (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206] (Kellett). Kellett, according to the People, could prevent the prosecution from refiling the dismissed charges. Kellett is based on sections 654 and 954 and holds that “[w]hen ... the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence.” (Kellett, at p. 827, fn. omitted.) We are not persuaded by the People’s reasoning.
First, we note that the People have cited no cases where Kellett has been applied to bar the refiling of a charge dismissed pursuant to section 991 or 995, and we have found no such cases. To the contrary, in People v. Carter (2005) 36 Cal.4th 1215 [32 Cal.Rptr.3d 838, 117 P.3d 544], the Supreme Court held that section 654 does not bar the defendant’s trial on charges that were dismissed from an earlier complaint, even though the defendant was subsequently tried and convicted on the remaining charges in that complaint. (Carter, at pp. 1238-1240; see Jurado, supra, 4 Cal.App.4th at pp. 1230-1231 [defendant who pled guilty to murder without prosecutor’s consent after § 995 dismissal of lying-in-wait special circumstance allegation could later be retried on the special circumstance]; 3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) §§ 261, 262, pp. 416-417 [discussing the multiple prosecution rule, and distinguishing retrials on individual counts dismissed from a complaint, even after the defendant is convicted of the remaining charges].)
Section 1004 presents a situation analogous to that discussed here. That section permits a defendant to demur “to the accusatory pleading” on the grounds that the facts stated do not constitute “a public offense” or that the court lacks jurisdiction over “the offense charged.” (§ 1004, subds. 1 & 4.) If the demurrer is sustained and it appears the defects may be cured, the court may permit the filing of an amended complaint within 10 days. (§ 1007.) We can find no authority stating that Kellett bars the filing of the amended complaint if the defendant pleads to the remaining charges in the interim.
Nor do we believe that Kellett should apply in the scenario posed by the People. The bar against successive prosecutions, as set forth in Kellett, exists to prevent prosecutorial harassment of defendants. (See Kellett, supra, 63 Cal.2d at pp. 825-826 [“It would constitute wholly unreasonable harassment ... to permit trials seriatim until the prosecutor is satisfied with the punishment imposed.”].) It does not apply when a defendant deliberately *391 brings himself within the rule’s ambit through an act of “connivance and concealment.” (People v. Hartfield (1970) 11 Cal.App.3d 1073, 1081-1082 [90 Cal.Rptr. 274] (Hartfield) [defendant not allowed to claim the benefit of the multiple prosecution rule where he pled guilty to the misdemeanor charge of reckless driving in municipal court and advanced the date of the pronouncement of judgment so that judgment would be entered just before his scheduled trial on related felony charges in superior court].) A defendant who pleads guilty in a bid to foreclose refiling and prosecution of charges dismissed under section 991 does so out of “connivance” and will not be permitted to claim the benefit of a mle designed to prevent harassment of defendants by the government. (See Hartfield, at p. 1081 [“[I]n the case at bench the operative fact (pronouncement of judgment) giving rise to defendant’s claim of harassment from double prosecution as prohibited by Penal Code, section 654 was procured by defendant himself by connivance and concealment, and he may not claim the benefit of the statute.”].)
Moreover, even if the People were correct that Kellett could be invoked to bar the refiling of a charge dismissed pursuant to section 991, we believe the scenario is one that will occur in limited circumstances only and is unlikely to result in significant prejudice. The Kellett rule “is designed to cover prosecutions for offenses arising out of the same act.” (People v. Douglas (1966) 246 Cal.App.2d 594, 599 [54 Cal.Rptr. 777].) In Kellett, supra, 63 Cal.2d at page 824, the Supreme Court held that the charges of exhibiting a firearm in a threatening manner and possession of a concealable weapon by a felon could not be separately prosecuted where they arose from the single act of brandishing a pistol. By contrast, the rule has been held inapplicable in cases where the offenses arise from separate acts or conduct, even when they occurred in the same location at the same time. (See, e.g., People v. Martin (1980) 111 Cal.App.3d 973, 978 [169 Cal.Rptr. 52] [separate prosecutions for burglary and possession of a sawed-off shotgun permitted where the defendant stole the shotgun during the burglary]; People v. Hurtado (1977) 67 Cal.App.3d 633, 637 [136 Cal.Rptr. 774] [defendant may be separately prosecuted for drunk driving and possession of heroin where he was found trying to hide a package of heroin between his legs when stopped for drunk driving]; People v. Ward (1973) 30 Cal.App.3d 130, 136 [105 Cal.Rptr. 67] [defendant who pled guilty to oral copulation was subject to second prosecution for rape, kidnapping, and assault; “[t]he mere fact that they occurred in defendant’s vehicle during the same night does not connect them as parts of a continuous course of conduct”].)
Therefore, even if Kellett could be read as barring prosecution on the dismissed charges in the event a defendant pleads guilty following a count-by-count dismissal, the bar would not apply unless the charges arise from the same act or conduct. If they arise from the same act or conduct, then section *392 654 would have prohibited double punishment in any event. In setting forth the multiple prosecution rule, the Kellett court noted that section 654 necessarily creates a risk that defendants may escape proper punishment as a result of a conviction of a lesser offense. (Kellett, supra, 63 Cal.2d at p. 828; see, e.g., Barriga v. Superior Court (2012) 206 Cal.App.4th 739, 746 [142 Cal.Rptr.3d 110] [defendant who pled guilty to resisting peace officer in exchange for dismissal of related charge of unlawfully driving or taking vehicle could not be subsequently prosecuted for carjacking].) “Accordingly, to avoid these risks it has always been necessary for prosecutors carefully to assess the seriousness of a defendant’s criminal conduct before determining what charges should be prosecuted against him.” (Id. at p. 828.) It is equally necessary that prosecutors carefully assess the nature of the evidence and the charges supported by that evidence. We conclude, as the Supreme Court did in Kellett, that “[b]y emphasizing the importance of such assessment, our holding herein will not open the door to the escape of defendants from punishment for serious crimes because of convictions or acquittals of closely related minor crimes. It should tend instead to reduce the risk that they may escape such punishment by invoking the double jeopardy doctrine or the bar of section 654.” (Id. at pp. 828-829.)
DISPOSITION
The order of dismissal is affirmed.
Mosk, J., concurred.

Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

 All further statutory references are to the Penal Code, unless otherwise specified.

 In a May 14, 1980 memo to Assemblyman Elihu Harris from Jim Tucker of the American Civil Liberties Union (ACLU), the ACLU offers its opinion that Assembly Bill No. 2931 (1979-1980 Reg. Sess.) merely codifies Walters. However, even this memo notes, in language reminiscent of preliminary hearings, that “[t]he bill. . . [permits] the court to screen out those cases for which there is clearly no evidence to support the charge.” (Jim Tucker, ACLU, mem. to Assemblyman Elihu Harris, May 14, 1980.)

 The Legislative Counsel’s Digest for Assembly Bill No. 2931 (1979-1980 Reg. Sess.) is confusing and provides: “Existing law authorizes the magistrate in misdemeanor cases to ascertain the gravity of the offense committed, in case the defendant may be held to answer for a higher offense. Existing law does not specifically provide for a determination in misdemeanor cases, prior to the filing of an information, of whether there is probable cause to believe that a public offense has been committed and that the defendant is guilty thereof.” (Legis. Counsel’s Dig., Assem. Bill No. 2931 (1979-1980 Reg. Sess.) 4 Stats. 1980, Summary Dig., p. 470.) The first sentence applies to felonies, not misdemeanors. The second sentence juxtaposes the first sentence and is only necessary if the first sentence describes felony procedures. It is highly unlikely, from a reading of the complete legislative history, that every member of the Legislature voting for passage of Assembly Bill No. 2931 (1979-1980 Reg. Sess.), and every lawyer and judge who submitted comments, did so under the mistaken belief that misdemeanor and felony procedures were somehow conflated or merged because of the Legislative Counsel Digest’s comments. Indeed, even the People acknowledge that the errors in the Legislative Counsel’s Digest are irrelevant in terms of the issue presented.

 The People argue the precise opposite: that it would be absurd to “discharge the defendant” (§991, subd. (d)) simply because two of three counts are dismissed. Wherever possible, we harmonize statutory provisions relating to the same subject, in light of the Legislature’s overall purpose. (Industrial Risk Insurers v. Rust Engineering Co. (1991) 232 Cal.App.3d 1038, 1042 [283 Cal.Rptr. 873].) Given that one of the purposes behind legislative enactment of section 991 was to “weed out groundless misdemeanor complaints prior to trial” and to “permit the expeditious dismissal of unsupported or frivolous charges” (Sen. Judiciary Com., Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.) July 9, 1980, p. 2), we believe subdivision (d) of section 991 must be interpreted to mean that a defendant is discharged only “[i]f the court determines that no such probable cause exists [for each offense].”