Filed 7/30/18

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | No. BR 053647 |
| Plaintiff and Appellant, | ) | Downey Trial Court |
| v. | ) | No. 7DN07158 |
| ELISEO BARAJAS, | ) | |
| Defendant and Respondent. | ) | **OPINION** |

Appeal from an order of the Superior Court of Los Angeles County, Downey Trial Court, Gregorio Roman, Judge. Reversed.

Jackie Lacey, District Attorney of Los Angeles County, and John Harlan II and Matthew Brown, Deputy District Attorneys, for Plaintiff and Appellant.

Nicole Davis Tinkham, Interim Public Defender of Los Angeles County, Albert J. Menaster, Head Deputy Public Defender, Aubrey Cunningham and Nick Stewart-Oaten, Deputy Public Defenders, for Defendant and Respondent.

\*        \*        \*

1

Penal Code section 991 is the legislative safeguard that allows an in-custody misdemeanant to require the arraigning magistrate to determine whether there is probable cause to believe the defendant has committed a public offense. (Pen. Code, § 991, subd. (a).) If the magistrate finds no such probable cause, the defendant is entitled to a dismissal of the charge. (Pen. Code, § 991, subd. (d).)[1]

We are presented with the following issue: Does section 991 vest the trial court with the discretion to consider, as part of its determination of probable cause, whether the defendant's detention prior to arrest complied with the Fourth Amendment's requirement that it be based on reasonable suspicion? It is defendant's position that, upon request by the defense, a section 991 motion has two phases. The first phase tasks the trial court with determining whether evidence was seized in violation of the federal Constitution. In the second phase, the trial court is to consider only the evidence that was constitutionally seized in assessing whether there is probable cause to believe the accused committed a public offense.

The trial court permitted defendant to litigate the Fourth Amendment issue at his section 991 hearing. After reviewing documents submitted with the People's opposition, it found defendant was detained by a police officer and that his detention was not supported by reasonable suspicion. Thereafter, upon defense motion, the trial court dismissed the complaint. The People have appealed.

As we will explain, litigation concerning the constitutionality of a defendant's detention is not supported by either the plain meaning of section 991 or its purpose. We are mindful that, over 30 years ago, this appellate division resolved the issue differently in *People v. Ward* (1986) 188 Cal.App.3d Supp. 11 (*Ward*). The time has come to overrule *Ward* because section 991 was not properly interpreted therein.[2] We reverse the trial court's order dismissing

---

[1]All further statutory references are to the Penal Code.

[2]Neither party addresses the doctrine of stare decisis. Suffice it to say that, "[a]lthough the doctrine does indeed serve important values, it nevertheless should not shield court-created error from correction." (*Cianci v. Superior Court* (1985) 40 Cal.3d 903, 924; see also *Monell v. Dept. of Social Services of the City of New York* (1978) 436 U.S. 658, 695 [stare decisis not mechanically applied to prohibit overruling prior decisions interpreting statutes].)

the complaint.

## BACKGROUND

A misdemeanor complaint charged defendant and respondent Eliseo Barajas with carrying a dirk or dagger (§ 21310). At his arraignment, defendant pled not guilty and made a motion to dismiss the charge pursuant to section 991. In so doing, defendant argued he was entitled to a dismissal of the complaint because he was illegally detained by the police. The People took the position that a motion under section 991 does not consider whether there was reasonable suspicion to detain a defendant, but rather is limited to "whether there is probable cause to believe that a public offense has been committed and that the defendant is guilty thereof." The trial court disagreed with the People, but found good cause for a continuance to allow the People to file a supplemental police report regarding the detention. The People then filed an opposition to the section 991 motion. Attached to the opposition was a copy of the police report, a supplemental report from the arresting officer (Downey Police Officer A. Honrath), and a transcript of the officer's encounter with defendant as recorded on a police body camera.

The material facts (to the extent they were developed in the trial court) are not in dispute. They are lifted from Honrath's supplemental police report as well as the transcript of the conversation taken from his body camera. Honrath was on patrol around 2:25 a.m. on September 20, 2017, when he saw defendant standing near a closed business. He stopped his vehicle and shined his "white light" on defendant. Honrath illuminated defendant with the light for reasons that relate to officer safety—Honrath was alone, and the darkness of early morning prevented him from clearly seeing what defendant was doing. The police vehicle was approximately 15 to 20 feet away and did not impede defendant's "movements." Honrath exited his vehicle and, while standing next to it, asked defendant where he was "from." Defendant said he lived in Bell Gardens. In response to the officer's inquiry about defendant's reason for being in Downey, defendant said his uncle lived in Downey. Defendant then began to drink from a large soda. Honrath "slowly and casually" approached to within six to eight feet of defendant. Defendant did not move or turn away. Rather, he was relaxed and

3

cooperative.

Honrath asked defendant if he was on probation or parole. Defendant said he was on probation and began to reach inside his sweatshirt pocket. The officer told defendant to keep his hands out of the pocket. Defendant first said, "I just have my blade," and then explained, "I have my blade open." Honrath replied, "Your blade?" Defendant responded, "Yes." The officer directed defendant to sit down, kick his legs out in front of him, cross his ankles, and keep his hands where Honrath could see them. As the two continued to converse, defendant disclosed that his knife was black and four inches long, and that he carried it for protection. After an additional officer arrived, Honrath asked defendant to remove the knife from his pocket and place it on a step several feet away. Defendant complied with the request. Honrath retrieved the knife, arrested defendant for violating section 21310, and transported him to jail. The knife was booked into evidence.

The trial court ruled Honrath's initial encounter with defendant was not consensual,[3] and that defendant was unconstitutionally detained prior to admitting he possessed a knife. The trial court then granted the defense motion to dismiss, but did not provide any reason for doing so. Presumably, the trial court concluded all evidence seized following the detention could not be considered in determining whether there was probable cause to believe defendant committed an offense.

## DISCUSSION

*The Plain Meaning of Section 991*

On appeal, questions of law and statutory interpretation are reviewed de novo. (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1276.) "'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citation.]" (*People v. Gonzalez* (2008)

---

[3]The trial court expressed considerable concern that Honrath's body camera was apparently activated late enough that, at a minimum, it excluded the officer's first question to defendant.

43 Cal.4th 1118, 1125-1126.) '"""If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." [Citations.]' [Citation.] Put another way, the ascertainment of legislative intent must 'begin with the language of the statute itself. [Citation.] That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning. [Citation.] "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.'" [Citation.]' [Citations.]" (*People v. Herman* (2002) 97 Cal.App.4th 1369, 1380-1381.) We turn to the specifics of section 991.

In pertinent part, section 991 provides: "(a) If the defendant is in custody at the time he appears before the magistrate for arraignment and, if the public offense is a misdemeanor to which the defendant has pleaded not guilty, the magistrate, on motion of counsel for the defendant or the defendant, shall determine whether there is probable cause to believe that a public offense has been committed and that the defendant is guilty thereof. [¶] . . . [¶] (c) In determining the existence of probable cause, the magistrate shall consider any warrant of arrest with supporting affidavits, and the sworn complaint together with any documents or reports incorporated by reference thereto, which, if based on information and belief, state the basis for such information, or any other documents of similar reliability. [¶] (d) If, after examining these documents, the court determines that there exists probable cause to believe that the defendant has committed the offense charged in the complaint, it shall set the matter for trial. [¶] If the court determines that no such probable cause exists, it shall dismiss the complaint and discharge the defendant."

Five years prior to the enactment of section 991, the foundation for such legislation was laid by *Gerstein v. Pugh* (1975) 420 U.S. 103 (*Gerstein*). At the time *Gerstein* was decided, Florida's statutory scheme permitted a defendant charged by information to be detained pending trial without a judicial determination of probable cause. (*Id*. at pp. 109-110, 116.) *Gerstein* disapproved of such a procedure, holding the Fourth Amendment vests an in-custody

5

defendant with the right to have a prompt[4] post-arrest determination of whether there was probable cause to believe he or she committed a crime. (*Id*. at pp. 111-120.)

The California Supreme Court ultimately applied the *Gerstein* rule to California misdemeanants held in custody. (*In re Walters* (1975) 15 Cal.3d 738, 747 (*Walters*).) Because section 991 did not exist at the time *Walters* was decided, "California procedures governing the pretrial detention of those charged with misdemeanors . . . [did] not . . . comport with . . . constitutional requirements . . . since the defendant [was] not afforded a post-arrest judicial determination that probable cause exist[ed] for his continued detention." (*Ibid*.) This led to *Walters*'s holding that, "unless waived, a judicial determination of probable cause is required in every case where a defendant charged with a misdemeanor is detained awaiting trial." (*Ibid*.) In response, the Legislature enacted section 991 in order "(1) to eliminate groundless complaints and (2) to codify *Walters*." (*People v. McGowan* (2015) 242 Cal.App.4th 377, 383-384.)

Section 991 expressly defines the determination to be made by the court—i.e., "whether there is probable cause to believe that a public offense has been committed and that the defendant is guilty thereof." (§ 991, subd. (a).) The statute makes no reference to any other issue to be resolved at such a hearing. Nor is there any suggestion the court, in its discretion, is permitted to expand the scope of a section 991 hearing to consider other issues as part of its probable cause determination. "The purpose of . . . section 991 is to only 'determine whether there is probable cause to believe that a public offense has been committed' by the defendant. [Citations.]" (*People v. Scott* (1993) 20 Cal.App.4th Supp. 5, 9, italics omitted.) The plain language of section 991 limits the consideration to be made by the trial court; it does not provide a mechanism for the defense to challenge the constitutionality of defendant's detention.

*Relationship of Section 991 to the Preliminary Hearing*

When giving meaning to a statute, courts "'consider the language of the entire scheme and related statutes . . . .' [Citations.]" (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

---

[4]Generally speaking, a determination within 48 hours of arrest satisfies the promptness requirement. (*County of Riverside v. McLaughlin* (1991) 500 U.S. 44, 56-57.)

"'[S]tatutory sections relating to the same subject must, to the extent possible, be harmonized.' [Citation.]" (*926 North Ardmore Ave., LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328.) As we will explain, the parameters we define for a section 991 motion harmonize the statute with rules governing preliminary hearings and the plain language of section 1538.5, subdivision (m).

A defendant charged by complaint with a felony offense is entitled to a preliminary hearing to determine whether there is sufficient evidence to hold him or her to answer the charges. (§§ 871, 872.) "The issues before a magistrate on preliminary hearing are whether a public offense has been committed and whether there is probable cause to believe the defendant is guilty thereof. [Citations.]" (*People v. Williams* (1989) 213 Cal.App.3d 1186, 1197 (*Williams*).) We stated above the legislatively defined question presented at a section 991 hearing—"whether there is probable cause to believe that a public offense has been committed and that the defendant is guilty thereof" (§ 991, subd. (a)). The subjects of the two proceedings are virtually identical.

"[T]hroughout the legislative history, the probable cause hearing under section 991 has been referred to as [the] 'preliminary hearing[] for misdemeanors.' [Citation.]" (*People v. McGowan*, *supra*, 242 Cal.App.4th at p. 385.) "[T]he Legislature contemplated that section 991 probable cause hearings would serve a purpose similar to that of preliminary hearings in felony cases . . . ." (*Id.* at pp. 385-386.) Given the functional parity between preliminary hearings and section 991 determinations, we consider whether a defendant may litigate the constitutionality of his or her detention in the course of the preliminary hearing (without filing a section 1538.5 motion to suppress).

It has squarely been held that "the only way in which a defendant can litigate the unreasonableness of a search and seizure at the preliminary hearing is to move to suppress under section 1538.5." (*Williams*, *supra*, 213 Cal.App.3d at p. 1195.) In reaching this conclusion, *Williams* relied on the plain language of section 1538.5, subdivision (m), which reads in pertinent part: "The proceedings provided for in this section, and [s]ections 871.5 [prosecutor's motion to reinstate previously dismissed complaint], 995 [motion to set aside

7

indictment or information], 1238 [appeals in felony cases], and 1466 [appeals in misdemeanor and infraction cases] shall constitute the sole and exclusive remedies prior to conviction to test the unreasonableness of a search or seizure where the person making the motion for the return of property or the suppression of evidence is a defendant in a criminal case and the property or thing has been offered or will be offered as evidence against him or her." (See also *Williams*, *supra*, 213 Cal.App.3d at pp. 1195-1196.) "Of the sections mentioned in subdivision (m), only section 1538.5 is available at the preliminary hearing." (*Id*. at p. 1196.)[5] Thus, the scope of a preliminary hearing is limited to "any evidence which . . . [has] a 'tendency in reason to prove or disprove' facts showing that an offense has been committed or facts showing defendant is guilty thereof . . . . [Citations.]" (*Id*. at p. 1197.)

In this context, the analogy between the preliminary hearing and a section 991 hearing is strong. Section 991 is not included as one of the few statutes (distinct from section 1538.5) under which a suppression of evidence issue could be litigated. There is no constitutional or statutory basis for a trial court, tasked with resolving the same issue (and using the same standard) at a section 991 hearing, to consider evidence that is beyond the restrictions explained in *Williams*. Whether the proceeding is a preliminary hearing or a section 991 motion, section 1538.5 is the exclusive pretrial vehicle to test the unreasonableness of a search or

---

[5]When section 1538.5 was originally enacted in 1967, subdivision (m) read: "'The proceedings provided for in this section, Section 995, Section 1238, and Section 1466 shall constitute the sole and exclusive remedies prior to conviction to test the unreasonableness of a search or seizure where the person making the motion for the return of the property or the suppression of evidence is a defendant in a criminal case and the property or thing has been offered or will be offered against him.'" (*Thompson v. Superior Court of Los Angeles County* (1968) 262 Cal.App.2d 98, 102, quoting § 1538.5, subd. (m), fn. omitted.) Section 991 was not enacted until 1980. But, in 1982, subdivision (m) was amended to add section 871.5 to the list of exceptions to the general rule that section 1538.5 is the means by which to litigate suppression issues. (Stats. 1982, ch. 625, § 1, eff. August 27, 1982, ch. 1505, § 6.) The Legislature's decision to amend the exceptions to include a statute other than section 991 suggests section 991 is not a vehicle for litigating search and seizure issues. (See *People v. McClanahan* (1992) 3 Cal.4th 860, 865 [if the Legislature is given an opportunity to amend a statute to include exceptions to its purview, and includes only certain exceptions, it is indicative of a legislative intent to limit the exceptions to those specified].)

seizure.[6]

*The Ward Decision*

After acknowledging *Walters* implemented the probable cause determination required by *Gerstein*, and that section 991 in turn executed the requirements of *Walters* (*Ward, supra,* 188 Cal.App.3d at p. Supp. 15), *Ward* concluded it was "clear that the lawfulness of an arrest is to be considered at such a . . . hearing [citation]" (*ibid.*) and that, "following the specifications of *Walters*, . . . [the] magistrate [is allowed] to determine the lawfulness of the custodial detention of a misdemeanant based upon the reading and consideration of an arrest report attached to the complaint, under the circumstances at bench" (*id.* at p. Supp. 16, fn. omitted). In fact, however, just as nothing in the plain language of section 991 allows for litigating the constitutionality of the defendant's detention, nothing in either *Gerstein* or *Walters* suggests the determination of probable cause incorporates the consideration of such an issue.

*Gerstein* explained the full panoply of adversary safeguards, including counsel, confrontation, cross-examination, and compulsory process for witnesses, "[was] not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same

---

[6]The reasoning of *Williams* applies even more forcefully to the issue with which we are presented.

Sections 995 and 991 serve "analogous purposes (to weed out unsupported charges prior to trial)." (*McGowan, supra,* 242 Cal.App.4th at p. 382.) A section 995 motion provides an avenue for a defendant charged with a felony to set aside an indictment or information if the defendant "has been committed without reasonable or probable cause." (§ 995, subd. (a)(1)(B) & (2)(B).)

By referencing section 995 as a proceeding in which a suppression issue may be litigated, the Legislature authorized a defendant who unsuccessfully moves to suppress at a preliminary hearing to "raise the matter in superior court under the standards governing a section 995 motion. (§ 1538.5, subd. (m).)" (*People v. Superior Court (Cooper)* (2003) 114 Cal.App.4th 713, 717.)

The Legislature's decision to identify section 995 (but not section 991) as a statute under which the constitutionality of a search or seizure may be litigated is a strong indicator that such a determination is beyond the scope of a section 991 hearing. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 ["The expression of some things in a statute necessarily means the exclusion of other things not expressed"]; *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 381 [the fact that the Legislature provided for a private right of action to remedy certain Welfare and Institutions Code violations, but not for the one asserted by plaintiff, is a "strong indication" plaintiff does not have a private right of action under the asserted statute].)

as that for arrest. That standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof." (*Gerstein*, *supra*, 420 U.S. at p. 120, fn. omitted.) Litigation concerning the reasonableness of a search or seizure would move the probable cause determination hearing outside the boundaries *Gerstein* sets for a prompt and informal hearing.

Similarly, *Walters* described the probable cause determination for misdemeanants in the following way. "When a defendant is arrested without a warrant . . . , the judge may make his determination upon a sworn complaint which incorporates by reference other factual materials which, together with the complaint, establish probable cause for detention. Such other materials may include a copy of a police or other report which forms the basis for the complaint and arrest. We recognize that the information in such a report is hearsay, but hearsay evidence has traditionally been deemed to establish probable cause without infringing Fourth Amendment prohibitions. [Citations.] To assure that the reports bear the indicia of reliability necessary to justify the magistrate's reliance upon them, the materials submitted must be stated upon the personal knowledge of the party who makes the report or upon the information and belief of such person who further states the basis for his information and belief and other facts which demonstrate the trustworthiness of such information. [Citations.]" (*Id*. at p. 751, italics omitted.) *Walters* is in lockstep with *Gerstein*.

Both *Gerstein* and *Walters* contemplate a procedure largely based on documentary evidence and not conducive to a determination of whether evidence was constitutionally obtained. "The use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. [Citation.]" (*Gerstein*, *supra*, 420 U.S. at p. 121, fn. omitted.)

The same cannot be said for an assessment of whether evidence was obtained in

violation of the Fourth Amendment. A motion challenging the constitutionality of a search or seizure often turns on the credibility of witnesses or the trial court's factual findings. It is litigated at a formal hearing with witness testimony and cross-examination. The suppression hearing is subject to discretionary discovery orders and provides rights that are nonexistent at probable cause determinations. (*Magallan v. Superior Court* (2011) 192 Cal.App.4th 1444, 1464 [defendant has a "well-established right to due process" at a suppression hearing and, for that reason, the trial court has the power to grant a defendant's discovery request tailored to the Fourth Amendment issues to be litigated at the hearing].) Limitations applicable to probable cause hearings have no place in the litigation of search and seizure issues.[7]

*Section 991.5*

Defendant argues the Legislature silently approved of *Ward*'s holding because it did not amend section 991 after *Ward* was decided. (See, e.g., *People v. Salas* (2006) 37 Cal.4th 967, 979 [inferring "legislative acquiescence" in a prior decision interpreting a provision of the Corporations Code because the Legislature had frequently amended the corporate securities laws over a period of 10 years following the prior decision].) He relies heavily on the fact that, in 2016, the Legislature enacted section 991.5 and in so doing cited *Ward* as support for the new legislation.

Section 991.5 institutes a program wherein three counties "participate in a three-year pilot project that would require a court, upon request by the defendant in the case of a defendant charged with a misdemeanor who is not in custody, to make a finding at the arraignment as to

---

[7]It is often impractical to litigate the constitutionality of a detention in the course of reviewing police reports and other documentary evidence at an informal hearing to determine whether there is probable cause to detain the arrested person. The case before us presents a good illustration of that point. The trial court explained what tipped the scales in favor of suppression in the following way. "[W]hat really sways the court is the lack of the first few seconds as to the questions asked of the defendant when the recorder was not -- for some reason, he didn't say that it was not working, he just said that it started. Obviously the recorder starts when the officer either pushes or starts the recording. He doesn't indicate that when he started or when he pushed on it, it only provides the questions already after some contact has happened." A formal suppression hearing includes testimony from officers relevant to the constitutional issue and, in this case, would have undoubtedly produced evidence explaining (a) why the recorder was not initiated prior to the first question, and (b) content and context of any unrecorded conversation.

whether probable cause exists to believe that a public offense has been committed and that the defendant is guilty thereof." (§ 991.5, subd. (a).)  It is true, as defendant points out, that citation to *Ward* appears in the Senate Rules Committee's Third Reading (SRC3) and in the Senate Committee on Appropriations (SCA) summary of the bill.  However, defendant takes the citations out of context.

In the section of the SRC3 devoted to arguments in opposition of the bill, a portion of a statement issued by the California District Attorneys Association is quoted as follows. "Following *Gerstein*, Penal Code section 991 was enacted 'to be a safeguard against the hardship suffered by a misdemeanant who is detained in custody, by providing that a probable cause hearing will be held immediately, at the time of arraignment . . .' (*People v. Ward* (1986) 188 Cal.App.Supp. 11, 15, 17.) . . . For an out-of-custody defendant, there is no such hardship. [¶] To expand [section] 991 to apply to out-of-custody defendants is to misunderstand the entire purpose of [section] 991, and would result in additional trial court resources being spent to remedy a hardship that arguably does not exist." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2013 (2015-2016 Reg. Sess.) as amended Aug. 15, 2016, pp. 6-7.)  The SCA quotes a nearly identical passage from *People v. McGowan* (2015) 235 Cal.App.4th Supp. 1, 6:[8]  "In response to the requirements of *Walters*, section 991 was enacted 'to be a safeguard against the hardship suffered by a misdemeanant who is detained in custody, by providing that a probable cause hearing will be held immediately, at the time of arraignment . . . .' (*People v. Ward* (1986) 188 Cal.App.3d Supp. 11, 15, 17.)" (Sen. Com. on Appropriations, Fiscal Summary of Assem. Bill No. 2013 (2015-2016 Reg. Sess.) Aug. 1, 2016 hearing, p. 2.)

We do not put significant weight on these two citations.  There is no mention of *Ward*'s *holding* in the legislative history of section 991.5.  The reference to *Ward* in the SRC3 was made by an outside agency opposing the bill; it was not in any way an acknowledgment by the Legislature that *Ward* was properly decided.  Most importantly, the two citations to *Ward*

---

[8]The opinion of the appellate division in *McGowan* was superseded by *People v. McGowan* (2015) 242 Cal.App.4th 377.

merely explain the historical context of section 991; they are far from a legislative endorsement of its holding. We are not inclined to conclude that when the Legislature enacted a temporary pilot program to allow section 991 motions for out-of-custody misdemeanants in three counties of California, its two references to *Ward* for historical perspective were a tacit approval of *Ward*'s ultimate holding that Fourth Amendment issues were suitable for section 991 hearings.

"The Legislature's failure to act may indicate many things other than approval of a judicial construction of a statute: the 'sheer pressure of other and more important business,' 'political considerations,' or a 'tendency to trust to the courts to correct their own errors . . . .'" (*County of Los Angeles v. Workers' Comp. Appeals Bd*. (1981) 30 Cal.3d 391, 404, internal quotation marks omitted.) The Legislature's inaction does not trump the plain meaning of section 991 or its strict constitutional purpose as defined by *Walters*.

*Admissibility of Evidence*

Defendant claims he has a constitutional right to object to the use of illegally obtained evidence at a misdemeanor probable cause hearing, citing in support *Mapp v. Ohio* (1961) 367 U.S. 643, 655 ["We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court"] and *U.S. v. Calandra* (1974) 414 U.S. 338, 347 [under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure"].)

What defendant misses is that the referenced holdings were in the context of using illegally obtained evidence "to convict [a defendant] of crime or to forfeit his goods" (*Mapp v. Ohio*, *supra*, 367 U.S. at p. 647) and "where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search" (*U.S. v. Calandra*, *supra*, 414 U.S. at p. 348). The constitutional ban to using improperly seized evidence applies to proceedings in which a defendant could be convicted of a crime or subjected to the imposition of a criminal sanction, not to determinations of probable cause to hold a defendant in custody

pending trial.[9] As *Gerstein* emphasized, the informal probable cause hearing is justified, in part, by the less severe consequences of the magistrate's ruling. (*Gerstein*, *supra*, 420 U.S. at p. 121.) Defendant's argument cannot be reconciled with *Gerstein*.

## DISPOSITION

The order dismissing the complaint is reversed. *People v. Ward* (1986) 188 Cal.App.3d Supp. 11 is overruled.

_____
Kumar, J.

We concur:

_____                    _____
P. McKay, P. J.                                     Richardson, J.

---

[9]Defendant's string citation to authorities for the proposition that "competent" evidence is required to support probable cause determinations is of little assistance. To condition the consideration of evidence on its "competence" or admissibility is inconsistent with the approach sanctioned by *Gerstein* and *Walters*, i.e., an informal proceeding that permits consideration of police reports, sworn complaints, and hearsay. "Of course an objection to evidence may be made, but [this does not mean] a mere objection to the People's offer of evidence can be used in the place of a suppression motion under section 1538.5, to litigate a search and seizure issue." (*People v. Williams*, *supra*, 213 Cal.App.3d at p. 1196.)